**UNITED STATES of America,
Appellee,**

v.

**Jose GERALDO, a/k/a Fifio, Appellant.**

**No. 00–3105.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 6, 2001.

Decided Nov. 27, 2001.

Stephen C. Leckar, appointed by the court, argued the cause and filed the briefs for appellant.

Jeffrey W. Bellin, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Kenneth L. Wainstein, U.S. Attorney, John R. Fisher, Thomas J. Tourish, Jr. and Arvind Lal, Assistant U.S. Attorneys.

Before: HENDERSON, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Searches carried out by federal agents at two District of Columbia residences—one at 1430 Newton Street, the other at 1823 Newton Street—led to the arrest, indictment and conviction of Jose Geraldo. In this appeal Geraldo claims the 1430 Newton Street search violated the federal knock and announce statute, 18 U.S.C. § 3109, and exceeded the scope of the search warrant. As to 1823 Newton Street, he maintains that his trial counsel was constitutionally ineffective because he did not assert Geraldo's privacy interest in the premises, thus disabling him from challenging the search of those premises.

## I.

We begin with the Sixth Amendment ineffective counsel claim. On November 12, 1998, FBI agents executed a search warrant at Apartment 12 at 1823 Newton Street. A special agent's affidavit supporting the search warrant gave details of the FBI's investigation of a conspiracy to distribute cocaine involving Geraldo, Luis Elias Ortiz and Jesus Antonio Leo. The affidavit concentrated on three transactions. The first occurred on August 3, 1998, when Ortiz and Geraldo sold $1,600 worth of cocaine to two informants. On that day, the informants met Geraldo at 1430 Newton Street. Geraldo told one of the informants that he had to go to another location about 15 minutes away to cook the cocaine, and he asked them to return in about 45 minutes. FBI agents followed Geraldo as he walked to 1823 Newton and back to 1430 Newton. Upon his return to 1430 Newton, Geraldo was seen pulling a bag of crack cocaine out of his pants as he climbed the stairs. Geraldo then gave the cocaine to Ortiz, who sold it to one of the informants in the first floor bathroom at 1430 Newton.

The second sale took place on September 14, 1998, when Geraldo and Leo sold 44.4 grams of cocaine base to the same two informants for $1,200 in the kitchen at 1430 Newton. According to the affidavit, prior to the sale one of the informants saw Leo cooking the cocaine into a cocaine base in the kitchen on the second floor at 1430 Newton and saw Geraldo weigh the crack on a scale in the kitchen.

The third sale occurred on October 5, 1998. The affidavit stated that on this date, Geraldo sold an informant approximately 60 grams of cocaine base for $1,580 in the hallway inside the main entrance at 1430 Newton.

The affidavit also provided information about telephone calls linking 1430 and 1823 Newton Street. A pen register covering a telephone number at 1430 Newton Street disclosed more than 60 calls between that number and a number subscribed to Apartment 12 at 1823 Newton Street.

Based on this information, a magistrate issued a search warrant for both 1430 Newton Street and Apartment 12 at 1823 Newton Street. The agents also obtained arrest warrants for several individuals, including Geraldo. When agents executed the search warrant at 1823 Newton Street on November 12, 1998, they found 69.3 grams of crack cocaine, 242 grams of powder cocaine in a padlocked closet, four kilogram wrappers used for packaging cocaine, and a pot recently used to cook crack cocaine.

Geraldo, having been charged with a variety of narcotics related crimes, filed a motion to suppress the evidence obtained at 1823 Newton. The district court denied the motion on the ground that Geraldo had not even suggested that he possessed a reasonable expectation of privacy in 1823 Newton, Apartment 12. *See* Memorandum Order at 4; *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

Geraldo now complains that his trial counsel provided ineffective assistance in failing to prove his privacy interest in Apartment 12 at 1823 Newton, an interest Geraldo thinks could easily have been established. He points to transcripts of a hearing on a motion to suppress by one of his codefendants, Eligio Pool, and transcripts from the severed trial of Pool. The transcripts indicate the following: Pool resided at Apartment 12; Geraldo paid him to use the closet at 1823 Newton to store drugs; Geraldo put a padlock on the closet; and Geraldo had a key to enter both Apartment 12 and the closet within the apartment.

When a defendant first raises a Sixth Amendment claim of ineffective counsel on direct appeal of his conviction,

other courts of appeals usually refuse to adjudicate it, leaving open to the defendant the alternative of bringing a collateral attack. *See* WAYNE R. LAFAVE, JEROLD H. ISRAEL & NANCY J. KING, CRIMINAL PROCEDURE § 11.7(e) at 631 (2d ed.1999); *see also United States v. Petty,* 1 F.3d 695, 696 (8th Cir.1993); *United States v. Smith,* 62 F.3d 641, 651 (4th Cir.1995); *United States v. Quintero–Barraza,* 78 F.3d 1344, 1347 (9th Cir.), *cert. denied,* 519 U.S. 848, 117 S.Ct. 135, 136 L.Ed.2d 83 (1996). Our practice has been different. We too generally decline to resolve the issue on direct appeal, but rather than requiring the defendant to raise the claim collaterally, we remand to the district court for an evidentiary hearing. *See United States v. Fennell,* 53 F.3d 1296, 1304 (D.C.Cir.1995). Two exceptions to our general practice have arisen: when the trial record conclusively shows that the defendant is entitled to no relief; and when the trial record conclusively shows the contrary. *See id.; United States v. Richardson,* 167 F.3d 621, 626 (D.C.Cir.), *cert. denied,* 528 U.S. 895, 120 S.Ct. 225, 145 L.Ed.2d 189 (1999); *United States v. Weathers,* 186 F.3d 948, 958 (D.C.Cir. 1999), *cert. denied,* 529 U.S. 1005, 120 S.Ct. 1272, 146 L.Ed.2d 221 (2000). We do not remand Geraldo's claim because it is clear that he cannot prevail.

■■■ The defendant bears the burden of proving that his lawyer made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment" and that counsel's deficient performance was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Courts "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. Geraldo cannot overcome this "strong presumption."

■■■ Sound tactical considerations weighed in favor of counsel's decision not to assert Geraldo's privacy interest in Apartment 12 at 1823 Newton. If Geraldo had testified at the suppression hearing about his interest in the premises, his testimony could have been used to impeach him at trial if he took the stand. *See, e.g., United States v. Jaswal,* 47 F.3d 539, 543 (2d Cir.1995); *United States v. Beltran–Gutierrez,* 19 F.3d 1287, 1290–91 (9th Cir. 1994). And he would have gained nothing because his attack on the search would have been frivolous. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Under *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984), evidence will not be suppressed when a police officer reasonably relies in good faith on a warrant issued by a magistrate, even if the warrant is later determined to be lacking in probable cause. The affidavit underlying the search warrant for 1823 Newton did not so clearly lack indicia of probable cause—indeed, it clearly showed probable cause—to make it objectively unreasonable for the agents to rely on it. Prejudice cannot result from an attorney's failure to pursue a frivolous claim. Geraldo's suppression motion amounted to nothing more, and establishing his privacy interest ran the risk of damaging his usefulness as a trial witness.

## II.

Geraldo's claims relating to the search of 1430 Newton Street are more serious. On November 12, 1998—the same day the FBI executed the search warrant at 1823 Newton—agents sent two informants into 1430 Newton to place a $3,000 order for 125 grams of cocaine. About five to ten minutes after the informants placed their order and left the residence (ostensibly to later return with payment for the drugs), Geraldo left the townhouse. Agents fol-

lowed Geraldo, arrested him and seized several keys in his possession.

A SWAT team then moved in on 1430 Newton pursuant to a search warrant: one group entered through the basement, another through the front door. At the basement level, an FBI agent knocked on the door, yelled "FBI, Search Warrant," and simultaneously used a battering ram to break the door before throwing a "flash bang" device into the home. (A "flash bang" is a cylindrical pyrotechnic device that creates a loud bang when it goes off, diverting the attention of those nearby.) At the main entrance, agents used Geraldo's keys to enter. One of the agents yelled "FBI, Search Warrant" as the front door was swinging open, and a flash bang device was then thrown through the open door.

Before entering 1430 Newton, the agents had limited information about the interior of the townhouse. Informants had told them that it was a large home in which several people lived, each with access to the common areas, as opposed to a multi-unit apartment building with distinct apartments inside. In addition, informants had told agents that there were no numbers on individual doors inside and that the doors on the second floor of the townhouse did not have separate locks.

Once inside 1430 Newton Street, the agents learned that the house did in fact consist of several individual rooms with locks on the doors. Agents entered all bedrooms, including those that were locked, in order to locate any persons hiding within the residence. After locating four persons and speaking with them about which rooms belonged to the persons named in the warrant, the agents limited their search to common areas and the rooms of persons, including Geraldo, named in arrest warrants the agents had obtained.

On the second floor, agents searched the kitchen because that was an area where a controlled buy had taken place. They also searched Geraldo's bedroom, as well as a room next to Geraldo's believed to belong to another man suspected of drug sales. While searching Geraldo's bedroom, the agents found a razorblade with cocaine residue hidden between the mattress and boxsprings of the bed, as well as a key to a padlock, a passport, and other documents. The key was later determined to fit a lock on the closet at 1823 Newton Street containing drugs.

Geraldo's motion to suppress this evidence was on the grounds that the agents failed to comply with the federal knock and announce statute and exceeded the scope of the search warrant. After an evidentiary hearing, the district court denied the motion, finding that exigent circumstances warranted the agents' entrance into the home without fully complying with the federal knock and announce statute and that the scope of the agents' search was reasonable. In executing a federal search warrant, an officer "may break open any outer or inner door or window of a house ... if, after notice of his authority and purpose, he is refused admittance...." 18 U.S.C. § 3109. In this case, the agents—acting pursuant to a predetermined entry plan—did not wait for a refusal. They announced their presence as they simultaneously entered the home. The question therefore is not whether they complied with § 3109, but rather whether exigent circumstances excused compliance.

We put to one side the fact that Geraldo was not at 1430 Newton when the search occurred. Although the Ninth Circuit has held that the defendant must be present in order to enjoy the protection of the knock and announce statute, *see Mena v. Simi Valley*, 226 F.3d 1031, 1035 n. 2 (9th Cir. 2000); *United States v. Valencia–Roldan*,

893 F.2d 1080, 1081 n. 1 (9th Cir.), *cert. denied,* 495 U.S. 935, 110 S.Ct. 2181, 109 L.Ed.2d 509 (1990), and the First Circuit has expressed "serious doubt" whether an absentee owner may raise a § 3109 claim, *United States v. DeLutis,* 722 F.2d 902, 908 (1st Cir.1983), the issue is unnecessary for us to decide.

■ The knock and announce procedure need not be followed if officers have a "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *United States v. Ramirez,* 523 U.S. 65, 70, 118 S.Ct. 992, 996, 140 L.Ed.2d 191 (1998). Some courts hold that the presence of a firearm may not in itself create an exigency sufficient to excuse compliance with the statute. *See, e.g., United States v. Moore,* 91 F.3d 96, 97 (10th Cir.1996); *United States v. Bates,* 84 F.3d 790, 795 (6th Cir.1996). Whatever the merits of this position, there is agreement that the presence of a firearm coupled with information such as a suspect's violent tendencies, criminal record, or specific violent threats is enough to create an exigency because the weapon might be used. *See, e.g., Ramirez,* 523 U.S. at 71, 118 S.Ct. at 996–97; *United States v. Harris,* 435 F.2d 74, 81 (D.C.Cir.1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971); *United States v. Nabors,* 901 F.2d 1351, 1354 (6th Cir.), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990).

■ In this case, the agents were not aware before they entered 1430 Newton that any residents had criminal records or violent tendencies. But they did have information that 1430 Newton had been robbed months earlier and that one man residing there (Elias Ortiz) had been seen wearing a revolver, allegedly to pro-

tect the residence from additional robberies. Because the agents had specific knowledge that Ortiz kept a firearm to protect against intruders and therefore might be quick to use it, the agents had reason to suspect danger. The fact that they assembled a SWAT team and took the precaution of using a "flash bang" tends to show that they so viewed the situation. Because the officers' belief that they were entering a dangerous situation was objectively reasonable, they were not required to knock and wait for a response.

■ Geraldo's remaining argument is that the agents exceeded the scope of the search warrant at 1430 Newton Street by continuing to search the townhouse after determining that there were individual, locked bedrooms within the home, indicative of a multi-unit dwelling. There is nothing to this. Upon discovering that 1430 Newton consisted of several individual rooms secured by padlocks, the agents properly limited their search to common areas and those rooms inhabited by persons named in the arrest warrants and in the affidavits accompanying the search warrant. *See Maryland v. Garrison,* 480 U.S. 79, 85, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987). This was a reasonable response to protect against an overbroad search of third persons' rooms not intended to be included within the warrant. Even if the Fourth Amendment rights of third parties—who were not named in the search warrant—were violated by the agents' entrance into their rooms, *see Mena v. Simi Valley,* 226 F.3d 1031 (9th Cir.2000), the agents did not infringe upon Geraldo's Fourth Amendment rights when they searched other individuals' rooms within 1430 Newton. *See Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–26, 58 L.Ed.2d 387 (1978). In any event, the cocaine encrusted razor blade, the documents, and the key to the pad-

locked closet at 1823 Newton were found in Geraldo's room.

*Affirmed.*