Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 21, 2003          Decided June 25, 2004

No. 02-3101

UNITED STATES OF AMERICA,
APPELLEE

v.

TIMOTHY J. CRIPPEN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00075–01)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Gregory L. Poe*, Assistant Federal Public Defender, entered an appearance.

*Geoffrey A. Barrow*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *John R. Fisher*, *Thomas J. Tourish, Jr.*, and *Ana Matheson*, Assistant U.S. Attorneys.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

Separate opinion concurring in the judgment filed by *Circuit Judge* ROGERS.

GINSBURG, *Chief Judge*: A jury convicted Timothy J. Crippen of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Crippen challenges his conviction on the ground that the district court erred in denying his motion to suppress evidence, namely, guns and ammunition, seized from his residence. Because we conclude the district court correctly denied Crippen's motion, we affirm his conviction.

## I. Background

The Metropolitan Police Department (MPD) learned from a confidential informant that Crippen, a convicted felon, had several weapons in his house in northeast Washington, D.C. The informant mentioned specifically having seen a sawed-off shotgun and two semi-automatic pistols. Based upon this information, Officer John Allen of the MPD's Fifth District sought and obtained a search warrant for the house. Before the warrant had been executed, however, the informant told Officer Allen that Crippen was trying to acquire a rocket launcher. A few days thereafter, the informant reported that he had seen a rocket launcher in Crippen's house. He described it as a shoulder-fired weapon consisting of a green two-piece tube and a "flip up" site.

Officer Allen then asked the MPD's Emergency Response Team (ERT) to execute the search warrant because of "the danger . . . of the rocket launcher." During a briefing for the ERT prior to executing the warrant, an officer demonstrated just how quickly a rocket launcher could be armed. He also said if the rocket launcher were fired at an officer "standing in the doorway . . . it would go straight through [him]."

The warrant was executed at 7:48 a.m. by a team of more than 20 ERT officers in tactical gear. Before the officers approached Crippen's door, a plain-clothed animal control

officer entered the yard to secure Crippen's dog. The lead officer then knocked three times on the front door and announced: "Police with a search warrant." Four seconds later,* police forced the door open with a battering ram and threw a "flash bang" diversionary device into the house. The officers found Crippen unarmed and asked him whether there were weapons in the house. Crippen directed them to a 12–gauge shotgun and a semi-automatic pistol in his bedroom closet. The officers also found a box of 12–gauge shotgun shells under a bed. They did not find the rocket launcher or the second semi-automatic pistol the informant had reported seeing.

At a pretrial hearing Crippen moved to suppress all the evidence recovered from his home on the ground the officers had "failed to provide a reasonable opportunity for the residents to open the door and . . . did not sufficiently announce their authority and purpose." The district court denied the motion, holding:

> [A]t the very least there were exigent circumstances that justified the actions of the police. Those circumstances being information received by an informant . . . relatively shortly before the entry into the house that inside the house were weapons including a weapon described as a rocket launcher. A weapon . . . the dangerousness of which was described by one of the police officer witnesses in this case. . . . Furthermore, the Court is of the view that even if there had been . . . something falling short of exigency, the degree to which there was a violation of the statute would not warrant suppression of the evidence in this case.

Crippen then entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to suppress.

---

* The MPD videotape of the event shows the officers waited only four seconds before forcing entry into Crippen's home. We find it troubling that the police report first stated the executing officers had waited 10 seconds before forcing entry — and more troubling still that the report was then changed to say they had waited 40 seconds.

On appeal Crippen argues the district court should have suppressed the evidence seized from his home because the officers forced entry in violation both of the Fourth Amendment to the Constitution of the United States and of the "knock and announce" statute, 28 U.S.C. § 3109. He posits the district court based its finding of exigent circumstances solely upon the presence of dangerous weapons and thus adopted a "categorical approach" inconsistent with the decision of the Supreme Court in *Richards v. Wisconsin*, 520 U.S. 385 (1997). The Government counters, first, the district court properly found the circumstances were exigent and, second, suppression of the evidence would not have been warranted even absent an exigency.

## II.   Analysis

Preliminarily, we reject the Government's argument that we must affirm Crippen's conviction because he has not challenged on appeal what the Government characterizes as the district court's "alternative holding," namely, that suppression was not warranted irrespective of the officers' noncompliance with § 3109. The Government here relies upon the last sentence excerpted above from the district court's oral opinion at the suppression hearing. That fragment is not sufficiently reasoned to fault the defendant for not having treated it as an independent basis for the district court's decision. Just as the rule of lenity requires that we interpret an ambiguous criminal statute in the defendant's favor, *see, e.g., United States v. Bass*, 404 U.S. 336, 347–49 (1971), so does the requirement of notice counsel against reading the district court's decision indulgently to the detriment of the defendant. *Cf. Smith v. O'Grady*, 312 U.S. 329, 334 (1941) ("most universally recognized requirement of due process" is "real notice [to defendant] of the true nature of the charge against him").

### A.   Knock and Announce

Under the Fourth Amendment and 18 U.S.C. § 3109, a law enforcement officer may forcibly enter a residence in order to execute a search warrant "if, after notice of his authority and

purpose, he is refused admittance." 18 U.S.C. § 3109; *see United States v. Ramirez*, 523 U.S. 65, 72–73 (1998). "[T]he phrase 'refused admittance' is not restricted to an affirmative refusal, but encompasses circumstances that constitute constructive or reasonably inferred refusal." *United States v. Bonner*, 874 F.2d 822, 824 (D.C. Cir. 1989). The entire "knock and announce" requirement "gives way," however, "when officers 'have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.'" *United States v. Banks,* __ U.S. ____, 124 S.Ct. 521, 525 (2003) (quoting *Richards*, 520 U.S. at 394). The standard for establishing such a reasonable suspicion is "not high." *Richards*, 520 U.S. at 394.

In this case it is undisputed the officers were obliged to knock and announce their presence and purpose when executing the search warrant. It is also undisputed the officers were not actually refused admittance to Crippen's house, nor did they wait long enough to infer they were being refused admittance. The question is whether, as the Government contends, exigent circumstances justify the officers' decision to force entry when they did.

B. Exigent Circumstances

In evaluating the Government's claim of exigent circumstances we review the district court's legal conclusions *de novo*; we review its factual findings only for clear error. "A broad range of exigent circumstances has been found to justify less than full compliance with the various requirements of section 3109," *Bonner*, 874 F.2d at 826, and, by implication, of the Fourth Amendment. There are, however, no bright-line rules or per se exceptions to the knock and announce requirement; we must therefore evaluate each claim of exigent circumstances upon "the facts and circumstances of the particular entry." *Richards*, 520 U.S. at 394.

Relying upon decisions of the Sixth, Eighth, and Tenth Circuits, Crippen maintains the anticipated presence of a firearm on the premises to be searched cannot by itself

excuse the officers' failure fully to comply with § 3109. *See United States v. Moore*, 91 F.3d 96, 98 (10th Cir. 1996) (Government must "demonstrate that the presence of firearms raised a concern for the officers' safety"); *United States v. Bates*, 84 F.3d 790, 796 (6th Cir. 1996) (fifteen kilograms of cocaine and potential presence of handgun insufficient to excuse compliance with knock and announce requirement); *United States v. Marts*, 986 F.2d 1216, 1218 (8th Cir. 1993) ("reasonable belief that firearms may have been within the residence, standing alone, is clearly insufficient"). Crippen's reliance upon these cases is misplaced.

In *United States v. Geraldo*, 271 F.3d 1112 (D.C. Cir. 2001), after acknowledging the aforementioned decisions of the Sixth and the Tenth Circuits, we explicitly reserved the question whether the mere presence of a gun could be sufficient to establish exigent circumstances. *See id.* at 1118. We did so because in *Geraldo* itself there was more: The police were aware the premises to be searched had been robbed a few months earlier and that, since then, one occupant "had been seen wearing a revolver, allegedly to protect the residence from additional robberies." *Id.* That information gave the police reason to suspect knocking and announcing their purpose and then waiting to be refused admittance would be particularly dangerous; "the agents had specific knowledge that [the occupant] kept a firearm to protect against intruders and therefore might be quick to use it." *Id.*

Here, as in *Geraldo*, we have no occasion to decide whether the anticipated presence of a gun could be sufficient by itself to create an exigency excusing less than full compliance with the requirements of the knock and announce statute and of the Fourth Amendment. Again there is something more involved than a mere gun.

A rocket launcher (a/k/a bazooka), is a high-powered weapon designed for use against hardened targets — such as armored tanks, *see United States v. McAnderson*, 914 F.2d 934, 940 (7th Cir. 1990) — with which the MPD presumably has little, if any, experience. The MPD was reasonably apprehensive enough to send more than 20 members of the

ERT to execute the warrant specifically because of "the danger [created by] the potential of the rocket launcher being . . . in the house." The ERT had been told that if the rocket launcher were fired at an officer "standing in the doorway . . . it would go straight through [him]." The unconventional nature of the weapon and the speed with which it could be loaded sufficed to create an exigency that ripened almost immediately after the officers knocked and announced their presence and purpose. *Cf. Banks*, 124 S.Ct. at 526. We therefore conclude the search satisfied the requirements both of the Fourth Amendment and of § 3109.

### III. Conclusion

For the foregoing reasons, Crippen's conviction is

*Affirmed.*

1

ROGERS, *Circuit Judge*, concurring in the judgment: I write separately to clarify two points, the first regarding the analytical standard for, and the second regarding the nature of the exigency exception to, the knock and announce requirements under 18 U.S.C. § 3109 and the Fourth Amendment.

**I.**

In *United States v. Banks*, 124 S. Ct. 521 (2003), the Supreme Court recently addressed the analytical framework for assessing the adequacy of police knocking and announcing their presence when executing a warrant. The Court rejected the "overlay of a categorical scheme on the general reasonableness analysis." *Id.* at 528. To the extent that *United States v. Bonner*, 874 F.2d 822, 826 (D.C. Cir. 1989), and its progeny, *see, e.g.*, *United States v. Kemp*, 12 F.3d 1140, 1142 (D.C. Cir. 1994), are read to create such an overlay, positing, absent some intervening exigency, a ten-second minimum wait before police may reasonably infer refusal of admittance, that "overgeneralization," *see Richards v. Wisconsin*, 520 U.S. 385, 393 (1997), can no longer survive. What is a reasonable period of time for the police to wait before entering pursuant to the knock and announce statute depends on the totality of the circumstances. *See Banks*, 124 S. Ct. at 528; *cf. United States v. Spriggs*, 996 F.2d 320, 322 (D.C. Cir. 1993) (citing *United States v. Davis*, 617 F.2d 677, 695 (D.C. Cir. 1979)); *Bonner*, 874 F.2d at 825–26. After *Banks*, irrespective of whether there might be potential benefits of a baseline offering specific guidance to law enforcement officials, *cf. United States v. Reid*, 997 F.2d 1576, 1579 (D.C. Cir. 1993), there is no "template" or "formula" for determining reasonableness. *See Banks*, 124 S. Ct. at 525 (citing *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357 (1931), and other cases).

Consequently, whether a reasonable period of time is fifteen seconds, *see Spriggs*, 996 F.2d at 322–23 (cited in *Banks*, 124 S. Ct. at 526 n.5), more than thirty seconds, *see Griffin v. United States*, 618 A.2d 114, 115, 125 (D.C. 1992), or even one to two minutes, *see United States v. Leichtnam*, 948 F.2d 370, 372, 374 (7th Cir. 1991), or more or less, will depend not on

whether the United States Attorney prosecutes a defendant in the federal or District of Columbia courts, but on whether an objective experienced law enforcement officer would, under the totality of the circumstances, reasonably infer refusal of admittance. *See Bonner*, 874 F.2d at 829; *see also Banks*, 124 S. Ct. at 527. Only if a knock and announcement is loud enough to be heard, followed by a period long enough, in the particular circumstances, for an occupant to answer or come to the door, is there a constructive refusal of admittance to the premises. *See Leichtnam*, 948 F.2d at 374. The duration of this pause will vary depending on factors such as the time of day, *see Griffin*, 618 A.2d at 121, the size of the premises to which entry is sought, which may affect how long an occupant would need to reach the door, *see Bonner*, 874 F.2d at 825, whether the officers perceive light, movement, or sounds reasonably indicating someone is up and about, *see, e.g.*, *Davis*, 617 F.2d at 695, or whether the police had reason to know, because they recently saw a person enter the place to be searched, that the premises is occupied, *see Griffin*, 618 A.2d at 123 (citing *United States v. DeLutis*, 722 F.2d 902, 904 (1st Cir. 1983)). In many circumstances, ten seconds will not be long enough for a reasonable officer to infer refusal of admittance; therefore, the officer on the scene (and the court) must look not to a bright line minimum time period, but to the totality of the circumstances in determining whether there has been a constructive refusal of admittance.

## II.

Of course, when an exigency arises, law enforcement officers "may go straight in." *Banks*, 124 S. Ct. at 525. The exigency that permits an exception to the knock and announce requirements is usually based on either of two concerns: an immediate danger to the officers executing a warrant, or a high likelihood that evidence will be destroyed or a suspect will flee before the police will be able to gain admittance to the premises. *Id.* at 526. Only the former concern is at issue here, and the government bears the burden of showing exigent circumstances that serve to eliminate the requirement that the police wait a reasonable period before

entering. *Cf. United States v. Jeffers*, 342 U.S. 48, 51 (1951). As the court acknowledges, *see* op. at 5, the police did not wait to be constructively denied admittance; there is no basis to conclude from the record that the four second interval was sufficient to allow a response from anyone inside 118 Quincy Place, Northeast, much less to allow anyone to come to the door. The question, therefore, is whether there were exigent circumstances permitting the police to enter the house after waiting only four seconds. *See id.*

The record indicates this case was a moving target because the police altered the records about the time that elapsed before they forcibly entered the premises. *See* op. at 3 n.*. The government's belated efforts to shore up its case as a result of these vacillations possibly affected its opportunity to flesh out the theoretical analysis for the conclusion that exigent circumstances existed. Indeed, on appeal the government seeks refuge in a so-called alternative ruling by the district court, an attempt that the court properly rejects. *See* op. at 4. But the court, too, does not flesh out a sufficient analysis. Finding an exigency based on the presence of an "unconventional" weapon that might be used against a "hardened target," *see* op. at 6–7, would appear to decide the question left open in *United States v. Geraldo*, 271 F.3d 1112, 1118 (D.C. Cir. 2001), and to threaten to create the type of blanket exception the Supreme Court rejected in *Richards*.

Crippen contends that unless the government offered evidence that an occupant of 118 Quincy Place was likely to react violently upon being confronted by the police executing a warrant, there was no exigency because the nature of the weapons allegedly present did not alone suffice to "present[ ] a threat of physical violence," *Wilson v. Arkansas*, 514 U.S. 927, 936 (1995), as viewed from the perspective of an objective, reasonable police officer. While no circuit court of appeals has held that the mere presence of a weapon automatically creates an exigency, three circuits have held that it does not. *See United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996); *United States v. Moore*, 91 F.3d 96, 98 (10th Cir. 1996); *United States v. Marts*, 986 F.2d 1216, 1218 (8th Cir. 1993); *see also Williams v. United States*, 576 A.2d 700, 706

(D.C. 1990) (quoting *People v. Dumas*, 512 P.2d 1208, 1213 (Cal. 1973)). The question is, however, open in this circuit, *see Geraldo*, 271 F.3d at 1118, and the court declines now to decide it on the ground that "something more" is present here. *See* op. at 6.

While I agree that there is "something more" to this case, the considerations relied on by the court would not suffice to demonstrate exigent circumstances. The police had obtained a search warrant based on an affidavit that a confidential informant had seen "Timothy Crippen" with two semi-automatic pistols and a "pistol-gripped shotgun with a laser sight" at 118 Quincy Place. The government does not suggest that this information sufficed to create an exigency that obviated the need to comply with normal knock and announce requirements. Nor did the government argue, in filing its opposition to Crippen's motion to suppress evidence, that an exigency was created by the same informant's post-warrant, pre-search disclosure that "Timothy Crippen" had acquired a rocket launcher. Instead, the government argued that "[i]t can reasonably be inferred that the police were being denied entry when they waited fourteen seconds and no one came to the door." The government first invoked the exigency exception only when, during the hearing on Crippen's motion to suppress, a videotape of the police entry revealed that the police had broken the front door and entered the house only four seconds after knocking and announcing, rather than the forty seconds the police had claimed in their official report or the fourteen seconds the United States Attorney had represented in its opposition to the motion to suppress.

The court would analogize the instant case to *Geraldo*, where the police knew there was an armed gunman who protected against robberies at a townhouse that was an active site for drug sales and the locus for the search. *See* op. at 6 (citing *Geraldo*, 271 F.3d at 1118). Yet there is no similar evidence suggesting that the police knew someone at 118 Quincy Place would react violently as a result of information about recent instances in which Crippen or anyone else at the premises had used the rocket launcher in a violent manner,

much less that someone had violently used or threatened to use any of the firearms underlying the warrant. *Cf. Culp v. United States*, 624 A.2d 460, 468 (D.C. 1993) (Rogers, C.J., concurring). In fact, the police affidavit for the search warrant indicates that the police believed the "Timothy Crippen" referred to by the informant was William Timothy Crippen, appellant's father, about whom the record lacks any evidence of violent tendencies or a criminal history. While police officers did testify that they believed there were two people inside the house, they were uncertain of what precise violent crime appellant Crippen had previously been convicted. Nor did the police have information, as in *Geraldo*, about ongoing criminal activity at the premises other than the unlawful possession of firearms. Evidence of the presence of Crippen's dog added nothing relevant.

The court's reliance on the additional circumstance that members of an urban police department may not be familiar with a rocket launcher appears misplaced. The government presented evidence that the police had been instructed on the power of a projectile fired from a rocket launcher and on the time it would take to arm the weapon. Also, the length of time for such arming was never made part of the record, and given the government's burden and its special ability to produce the evidence, *cf. United States v. Hoffman*, 964 F.2d 21, 24 (D.C. Cir. 1992), the absence of evidence does not warrant an inference favorable to the government, such as that the rocket launcher could be armed quickly so as to threaten the police knocking on the front door of the premises. Furthermore, reliance on the police apprehension on account of the presence of a rocket launcher, as evidenced by the presence of more than twenty members of the Emergency Response Team to execute the warrant, carries at best limited weight in the analysis of whether the government met its burden to show exigent circumstances. In determining whether there was an exigency, the court must analyze *de novo*, *see Ornelas v. United States*, 517 U.S. 690, 699 (1996), the reasonable suspicions of a hypothetical objective law enforcement officer, rather than inquire into the beliefs of the officers who actually carried out the search. *See United*

*States v. Brown*, 334 F.3d 1161, 1166–67 (D.C. Cir. 2003) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996), and *United States v. Christian*, 187 F.3d 663, 670 (D.C. Cir. 1999)). Reliance on the subjective perceptions of the officers at the scene as lending credence to the need to enter before being denied admission would, in any event, be countered by the testimony of the officer who breached the door that the rocket launcher did not place the officers in "extraordinary danger."

What ultimately makes this case not unlike *Geraldo*, and supplies the "something more," is not the presence of the rocket launcher itself, but rather the inference that the police could reasonably draw about Crippen from his suspected recent acquisition of a tool of war, given the totality of circumstances. Combined with the information about his suspected possession of several other firearms, which are strictly regulated in the District of Columbia, *see* D.C. Code § 22–4504, and his violent felony record, there was a reasonable basis for police officers to be apprehensive for their safety. Crippen, because of his suspected recent acquisition of a tool of war, could reasonably be thought by the police to be disposed to harbor violent anti-government tendencies and therefore to use a firearm to resist the search, had the police waited for a longer period after announcing their presence and purpose. The government does not make this argument in so many words, and the evidence regarding police apprehension referred to the danger from the launching of the rocket itself. *See* op. at 2. But the argument is implied from the government's brief that it is the combination of the illegal firearms, the rocket launcher, Crippen's criminal record, and his dog that created exigent circumstances. *See* Respondent's Br. at 18, 20, 21. Under the totality of the circumstances, and absent countervailing evidence either known or that should have been known indicating that Crippen, despite his recent acquisition of a tool of war, would not react violently, the police did not need to have information that he in fact had recently used firearms violently in order to conclude that there were exigent circumstances justifying a forced entry.

"It is always somewhat dangerous to ground exceptions to constitutional protections in the social norms of a given historical moment. The purpose of the Fourth Amendment's requirement of reasonableness 'is to preserve that degree of respect for the privacy of persons and the inviolability of their property that existed when the provision was adopted—even if a later, less virtuous age should become accustomed to considering all sorts of intrusion "reasonable." ' " *Richards*, 520 U.S. at 393 n.4 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 380 (1993) (Scalia, J., concurring)). The knock and announce requirements, incorporated into the Fourth Amendment and 18 U.S.C. § 3109 from the common law, *see Wilson*, 514 U.S. at 931–34; *United States v. Ramirez*, 523 U.S. 65, 73 (1998), are vital to protecting "individual privacy interests," *Richards*, 520 U.S. at 394, including a person's house, which the common law viewed as " 'his [or her] castle of defense and asylum.' " *Wilson*, 514 U.S. at 931 (citing 3 William Blackstone, *Commentaries* *288). Finding an exigency based on a reasonable police conclusion concerning the violent character of a person harboring multiple weapons, one of which is a recently acquired tool of war, is different from finding an exigency based on merely the presence of an "unconventional" weapon that might be used against a "hardened target." *See* op. at 6–7. The former bears an analogy to *Geraldo* because it informs the police about Crippen's possibly violent character toward government agents; the latter addresses the question left open in *Geraldo,* which the court purports to leave open. *See id.* The inference about Crippen's possible inclination to react violently, not the mere presence of a particular weapon, is the "something more" from which the court can conclude that the hasty police entry is consistent with avoidance of both unreasonable infringement of the interests protected by the Fourth Amendment and the type of blanket exception the Supreme Court rejected in *Richards*.

Accordingly, I concur in the judgment affirming the conviction.