Opinion for the Court filed by Chief Judge GINSBURG.
Separate opinion concurring in the judgment filed by Circuit Judge ROGERS.
GINSBURG, Chief Judge:
A jury convicted Timothy J. Crippen of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Crip-pen challenges his conviction on the ground that the district court erred m denying his motion to suppress evidence, namely, guns and ammunition, seized from his residence. Because we conclude the district court correctly denied Crippen’s motion, we affirm his conviction.
I. Background
The Metropolitan Police Department (MPD) learned from a confidential informant that Crippen, a convicted felon, had several weapons in his house in northeast Washington, D.C. The informant mentioned specifically having seen a sawed-off shotgun and two semi-automatic pistols. Based upon this information, Officer John Allen of the MPD’s Fifth District sought and obtained a search warrant for the house. Before the warrant had been executed, however, the informant told Officer Allen that Crippen was trying to acquire a rocket launcher. A few days thereafter, the informant reported that he had seen a rocket launcher in Crippen’s house. He described it as a shoulder-fired weapon consisting of a green two-piece tube and a “flip up” site.
Officer Allen then asked the MPD’s Emergency Response Team (ERT) to execute the search warrant because of “the danger ... of the rocket launcher.” During a briefing for the ERT prior to executing the warrant, an officer demonstrated just how quickly a rocket launcher could be armed. He also said if the rocket launcher were fired at an officer “standing in the doorway ... it would go straight through [him].”
The warrant was executed at 7:48 a.m. by a team of more than 20 ERT officers in tactical gear. Before the officers approached Crippen’s door, a plain-clothed animal control officer entered the yard to secure Crippen’s dog. The lead officer then knocked three times on the front door and announced: “Police with a search warrant.” Four seconds later,* police forced the door open with a battering ram and threw a “flash bang” diversionary device *844 into the house. The officers found Crip-pen unarmed and asked him whether there were weapons in the house. Crippen directed them to a 12-gauge shotgun and a semi-automatic pistol in his bedroom closet. The officers also found a box of 1£-gauge shotgun shells under a bed. They did not find the rocket launcher or the second semi-automatic pistol the informant had reported seeing.
At a pretrial hearing Crippen moved to suppress all the evidence recovered from his home on the ground the officers had “failed to provide a reasonable opportunity for the residents to open the door and ... did not sufficiently announce their authority and purpose.” The district court denied the motion, holding:
[A]t the very least there were exigent circumstances that justified the actions of the police-. Those circumstances being information received by an informant ... relatively shortly before the entry into the house that inside the house were weapons including a weapon described as a rocket launcher. A weapon ... the dangerousness of which was described by one of the police officer witnesses in this case. ... Furthermore, the Court is of the view that even if there had been ... something falling short of exigency, the degree to which there was a violation of the statute would not. warrant suppression of the evidence in this case.
Crippen then entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to suppress.
On appeal Crippen argues the district court should have suppressed the evidence seized from his home because the officers forced entry in violation both of the Fourth Amendment to the Constitution of the United States and of the “knock and announce” statute, 18 U.S.C. § 3109. He posits the district court based its finding of exigent circumstances solely upon the presence of dangerous weapons and thus adopted a “categorical approach” inconsistent with the decision of the Supreme Court in Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). The Government counters, first, the district court properly found the circumstances were exigent and, second, suppression of the evidence would not have been warranted even absent an exigency.
II. Analysis
Preliminarily, we reject the Government’s argument that we must affirm Crippen’s conviction because he has not challenged on appeal what the Government characterizes as the district court’s “alternative holding,” namely, that suppression was not warranted irrespective of the officers’ non-compliance with § 3109. The Government here relies upon the last sentence excerpted above from the district court’s oral opinion at the suppression hearing. That fragment is not sufficiently reasoned to fault the defendant for not having treated it as an independent basis for the district court’s decision. Just as the rule of lenity requires that we interpret an ambiguous criminal statute in the defendant’s favor, see, e.g., United States v. Bass, 404 U.S. 336, 347-49, 92 S.Ct. 515, 522-23, 30 L.Ed.2d 488 (1971), so does the requirement of notice counsel against reading the district court’s decision indulgently to the detriment of the defendant. Cf. Smith v. O’Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941) (“most universally recognized requirement of due process” is “real notice [to defendant] of the true nature of the charge against him”).
A. Knock and Announce
Under the Fourth Amendment and 18 U.S.C. § 3109, a law enforcement *845 officer may forcibly enter a residence in order to execute a search warrant “if, after notice of his authority and purpose, he is refused admittance.” 18 U.S.C. § 3109; see United States v. Ramirez, 523 U.S. 65, 72-73, 118 S.Ct. 992, 996, 140 L.Ed.2d 191 (1998). “[T]he phrase ‘refused admittance’ is not restricted to an affirmative refusal, but encompasses circumstances that constitute constructive or reasonably inferred refusal.” United States v. Bonner, 874 F.2d 822, 824 (D.C.Cir.1989). The entire “knock and announce” requirement “gives way,” however, “when officers ‘have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or ... would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.’ ” United States v. Banks, 540 U.S. 31,-, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003) (quoting Richards, 520 U.S. at 394, 117 S.Ct. at 1421). The standard for establishing such a reasonable suspicion is “not high.” Richards, 520 U.S. at 394, 117 S.Ct. at 1421.
In this case it is undisputed the officers were obliged to knock and announce their presence and purpose when executing the search warrant. It is also undisputed the officers were not actually refused admittance to Crippen’s house, nor did they wait long enough to infer they were being refused admittance. The question is whether, as the Government contends, exigent circumstances justify the officers’ decision to force entry when they did.
B. Exigent Circumstances
In evaluating the Government’s claim of exigent circumstances we review the district court’s legal conclusions de novo; we review its factual findings only for clear error. “A broad range of exigent circumstances has been found to justify less than full compliance with the various requirements , of section 3109,” Bonner, 874 F.2d at 826, and, by implication, of the Fourth Amendment. There are, however, no bright-line rules or per se exceptions to the knock and announce requirement; we must therefore evaluate each claim- of- exigent circumstances upon “the facts and circumstances of the particular' entry.” Richards, 520 U.S. at 394, 117 S.Ct. at 1421.
Relying upon decisions of the Sixth, Eighth, and Tenth Circuits, Crippen maintains the anticipated presence of a firearm on the premises to be searched cannot by itself excuse the officers’ failure fully to comply with § 3109. See United States v. Moore, 91 F.3d 96, 98 (10th Cir.1996) (Government must “demonstrate that the presence of firearms raised a concern for the officers’ safety”); United States v. Bates, 84 F.3d 790, 796 (6th Cir.1996) (fifteen kilograms of cocaine and potential presence of handgun insufficient to excuse compliance with knock and announce requirement); United States v. Marts, 986 F.2d 1216, 1218 (8th Cir.1993) (“reasonable belief that firearms may have been within the residence, standing alone, is clearly insufficient”). Crippen’s reliance upon these cases is misplaced.
In United States v. Geraldo, 271 F.3d 1112 (D.C.Cir.2001), after acknowledging the aforementioned decisions of the Sixth and the Tenth Circuits, we explicitly reserved the question whether the mere presence of a gun could be sufficient to establish exigent circumstances. See id. at 1118. We ,did so because in Geraldo itself there was more: The police were aware the premises to be searched had been robbed a few months earlier and that, since then, one occupant “had been seen wearing a revolver, allegedly to protect the residence from additional robberies.” Id. That information gave the police reason to *846 suspect knocking and announcing their purpose and then waiting to be refused admittance would be particularly dangerous; “the agents had specific knowledge that [the occupant] kept a firearm to protect against intruders and therefore might be quick to use it.” Id.
Here, as in Gemido, we have no occasion to decide whether the anticipated presence of a gun could be sufficient by itself to create an exigency excusing less than full compliance with the requirements of the knock and announce statute and of the Fourth Amendment. Again there is something more involved than a mere gun.
A rocket launcher (a/k/a bazooka), is a high-powered weapon designed for use against hardened targets — such as armored tanks, see United States v. McAnderson, 914 F.2d 934, 940 (7th Cir.1990) — with which the MPD presumably has little, if any, experience. The MPD was reasonably apprehensive enough to send more than 20 members of the ERT to execute the warrant specifically because of “the danger [created by] the potential of the rocket launcher being ... in the house.” The ERT had been told that if the rocket launcher were fired at an officer “standing in the doorway ... it would go straight through [him].” The unconventional nature of the weapon and the speed with which it could be loaded sufficed to create an exigency that ripened almost immediately after the officers knocked and announced their presence and purpose. Cf. Banks, — U.S. at-, 124 S.Ct. at 526. We therefore conclude the search satisfied the requirements both of the Fourth Amendment and of § 3109.
III. Conclusion
For the foregoing reasons, Crippen’s conviction is

Affirmed.

 The MPD videotape of the event shows the officers waited only four seconds before forcing entry into Crippen's home. We find it troubling that the police report first stated the executing officers had waited 10 seconds before forcing entry — and more troubling still that the report was then changed to say they had waited 40 seconds.