ROGERS, Circuit Judge,
concurring in the judgment:
I write separately to clarify two points, the first regarding the analytical standard for, and the second regarding the nature of the exigency exception to, the knock and announce requirements under 18 U.S.C. § 3109 and the Fourth Amendment.
I.
In United States v. Banks, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003), the Supreme Court recently addressed the analytical framework for assessing the adequacy of police knocking and announcing their presence when executing a warrant. The Court rejected the “overlay of a categorical scheme on the general reasonableness analysis.” Id. at 528. To the extent that United States v. Bonner, 874 F.2d 822, 826 (D.C.Cir.1989), and its progeny, see, e.g., United States v. Kemp, 12 F.3d 1140, 1142 (D.C.Cir.1994), are read to create such an overlay, positing, absent some intervening exigency, a ten-second minimum wait before police may reasonably infer refusal of admittance, that “overgen-eralization,” see Richards v. Wisconsin, 520 U.S. 385, 393, 117 S.Ct. 1416, 1420, 137 L.Ed.2d 615 (1997), can no longer survive. What is a reasonable period of time for the police to wait before entering pursuant to the knock and announce statute depends on the totality of the circumstances. See Banks, 540 U.S. at-, 124 S.Ct. at 528; cf. United States v. Spriggs, 996 F.2d 320, 322 (D.C.Cir.1993) (citing United States v. Davis, 617 F.2d 677, 695 (D.C.Cir.1979)); Bonner, 874 F.2d at 825-26. After Banks, irrespective of whether there might be potential benefits of a baseline offering specific guidance to law enforcement officials, cf. United States v. Reid, 997 F.2d 1576, 1579 (D.C.Cir.1993), there is no “template” or “formula” for determining reasonable *847 ness. See Banks, 540 U.S. at --, 124 S.Ct. at 525 (citing Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374 (1931), and other cases).
Consequently, whether a reasonable period of time is fifteen seconds, see Spriggs, 996 F.2d at 322-23 (cited in Banks, 540 U.S. at-n. 5, 124 S.Ct. at 526 n. 5), more than thirty seconds, see Griffin v. United States, 618 A.2d 114, 115, 125 (D.C.1992), or even one to two minutes, see United States v. Leichtnam, 948 F.2d 370, 372, 374 (7th Cir.1991), or more or less, will depend not on whether the United States Attorney prosecutes a defendant in the federal or District of Columbia courts, but on whether an objective experienced law enforcement officer would, under the totality of the circumstances, reasonably infer refusal of admittance. See Bonner, 874 F.2d at 829; see also Banks, 540 U.S. at-, 124 S.Ct. at 527. Only if a knock and announcement is loud enough to be heard, followed by a period long enough, in the particular circumstances, for an occupant to answer or come to the door, is there a constructive refusal of admittance to the premises. See Leichtnam, 948 F.2d at 374. The duration of this pause will vary depending on factors such as the time of day, see Griffin, 618 A.2d at 121, the size of the premises to which entry is sought, which may affect how long an occupant would need to reach the door, see Bonner, 874 F.2d at 825, whether the officers perceive light, movement, or sounds reasonably indicating someone is up and about, see, e.g., Davis, 617 F.2d at 695, or whether the police had reason to know, because they recently saw a person enter the place to be searched, that the premises is occupied, see Griffin, 618 A.2d at 123 (citing United States v. DeLutis, 122. F.2d 902, 904 (1st Cir.1983)). In many circumstances, ten seconds will not be long enough for a reasonable officer to infer refusal of admittance; therefore, the officer on the scene (and the court) must look not to a bright line minimum time period, but to the totality of the circumstances in determining whether there has been a constructive refusal of admittance.
II.
Of course, when an exigency arises, law enforcement officers “may go straight in.” Banks, 540 U.S. at-, 124 S.Ct. at 525. The exigency that permits an exception to the knock and announce requirements is usually based on either of two concerns: an immediate danger to the officers executing a warrant, or a high likelihood that evidence will be destroyed or a suspect will flee before the police will be able to gain admittance to the premises. Id. at 526. Only the former concern is at issue here, and the government bears the burden of showing exigent circumstances that serve to eliminate the requirement that the police wait a reasonable period before entering. Cf. United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). As the court acknowledges, see op. at 5, the police did not wait to be constructively denied admittance; there is no basis to conclude from the record that the four second interval was sufficient to allow a response from anyone inside 118 Quincy Place, Northeast, much less to allow anyone to come to the door. The question, therefore, is whether there were exigent circumstances permitting the police to enter the house after waiting only four seconds. See id.
The record indicates this case was a moving target because the police altered the records about the time that elapsed before they forcibly entered the premises. See op. at 3 n.*. The government’s belated efforts to shore up its case as a result of these vacillations possibly affected its op *848 portunity to flesh out the theoretical analysis -for the conclusion that exigent circumstances existed. Indeed, on ■ appeal the government seeks refuge in a so-called alternative ruling by the district court, an attempt that the court properly rejects. See op. at 4. But the court, too, does not flesh out a sufficient analysis. Finding an exigency based on the presence of an “unconventional” weapon that might be used against a “hardened target,” see op. at 6-7, would appear to decide the question left open in United States v. Geraldo, 271 F.3d 1112, 1118 (D.C.Cir.2001), and to threaten to create the type of blanket exception the Supreme Court rejected in Richards.
Crippen contends that unless the government offered evidence that an occupant of 118 Quincy Place was likely to react violently upon being confronted by the police executing a warrant, there was no exigency because the nature of the weapons allegedly present did not alone suffice to “present[] a threat of physical violence,” Wilson v. Arkansas, 514 U.S. 927, 936, 115 S.Ct. 1914, 1918, 131 L.Ed.2d 976 (1995), as viewed from the perspective of an objective, reasonable police officer. While no circuit court of appeals has held that the mere presence of a weapon automatically creates an exigency, three circuits have held that it does not.' See United States v. Bates, 84 F.3d 790, 795 (6th Cir.1996); United States v. Moore, 91 F.3d 96, 98 (10th Cir.1996); United States v. Marts, 986 F.2d 1216, 1218 (8th Cir.1993); see also Williams v. United States, 576 A.2d 700, 706 (D.C.1990) (quoting People v. Dumas, 9 Cal.3d 871, 109 Cal.Rptr. 304, 512 P.2d 1208, 1213 (1973)). The question is, however, open in this circuit, see Geraldo, 271 F.3d at 1118, and the court declines now to decide it on the ground that “something more” is present here. See op. at 846.
While I agree that there is “something more” to this case, the considerations relied on by the court would not suffice to demonstrate exigent circumstances. The police had obtained a search warrant based on an affidavit that a confidential informant had seen “Timothy Crippen” with two semi-automatic pistols and a “pistol-gripped shotgun with a laser sight” at 118 Quincy Place. The government does not suggest that this information sufficed to create an exigency that obviated the need to comply with normal knock and announce requirements. Nor did the government argue, in filing its opposition to Crippen’s motion to suppress evidence, that an exigency was created by the same informant’s post-warrant, pre-search disclosure that “Timothy Crippen” had acquired a rocket launcher. Instead, the government argued that “[i]t can reasonably be inferred that the police were being denied entry when they waited fourteen seconds and no one came to the door.” The government first invoked the exigency exception only when, during the hearing on Crippen’s motion to suppress, a videotape of the police entry revealed that the police had broken the front door and entered the house only four seconds after knocking and announcing, rather than the forty seconds the police had claimed in their official report or the fourteen seconds the United States Attorney had represented in its opposition to the motion to suppress.
The court would analogize the instant case to Geraldo, where the police knew there was an armed gunman who protected against robberies at a townhouse that was an active site for drug sales and the locus for the search. See op. at 845-46 (citing Geraldo, 271 F.3d at 1118). Yet there is no similar evidence suggesting that the police knew someone at 118 Quincy Place would react violently as a result of information about recent instances in *849 which Crippen or anyone else at the premises had used the rocket launcher in a violent manner, much less that someone had violently used or threatened to use any of the firearms underlying the warrant. Cf. Culp v. United States, 624 A.2d 460, 468 (D.C.1993) (Rogers, C.J., concurring). In fact, the police affidavit for the search warrant indicates that the police believed the “Timothy Crippen” referred to by the informant was William Timothy Crippen, appellant’s father, about whom the record lacks any evidence of violent tendencies or a criminal history. While police officers did testify that they believed there were two people inside the house, they were uncertain of what precise violent crime appellant Crippen had previously been convicted. Nor did the police have information, as in Geraldo, about ongoing criminal activity at the premises other than the unlawful possession of firearms. Evidence of the presence of Crippen’s dog added nothing relevant.
The court’s reliance on the additional circumstance that members of an urban police department may not be familiar with a rocket launcher appears misplaced. The government presented evidence that the police had been instructed on the power of a projectile fired from a rocket launcher and on the time it would take to arm the weapon. Also, the length of time for such arming was never made part of the record, and given the government’s burden and its special ability to produce the evidence, cf. United States v. Hoffman, 964 F.2d 21, 24 (D.C.Cir.1992), the absence of evidence does not warrant an inference favorable to the government, such as that the rocket launcher could be armed quickly so as to threaten the police knocking on the front door of the premises. Furthermore, reliance on the police apprehension on account of the presence of a rocket launcher, as evidenced by the presence of more than twenty members of the Emergency Response Team to execute the warrant, carries at best limited weight in the analysis of whether the government met its burden to show exigent circumstances. In determining whether there was an exigency, the court must analyze de novo, see Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996), the reasonable suspicions of a hypothetical objective law enforcement officer, rather than inquire into the beliefs of the officers who actually carried out the search. See United States v. Brown, 334 F.3d 1161, 1166-67 (D.C.Cir.2003) (citing Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 1773, 135 L.Ed.2d 89 (1996), and United States v. Christian, 187 F.3d 663, 670 (D.C.Cir.1999)). Reliance on the subjective perceptions of the officers at the scene as lending credence to the need to enter before being denied admission would, in any event, be countered by the testimony of the officer who breached the door that the rocket launcher did- not place the officers in “extraordinary danger.”
What ultimately makes this case not unlike Geraldo, and supplies the “something more,” is not the presence of the rocket launcher itself, but rather the inference that the police could reasonably draw about Crippen from his suspected recent acquisition of a tool of war, given the totality of circumstances. Combined with the information about his suspected possession of several other firearms, which are strictly regulated in the District of Columbia, see D.C.Code § 22-4504, and his violent felony record, there was a reasonable basis for police officers to be apprehensive for their safety. Crippen, because of his suspected recent acquisition of a tool of war, could reasonably be thought by the police to be disposed to harbor violent anti-government tendencies and therefore to use a firearm to resist the search, had the police waited for a longer period after announc *850 ing their presence and purpose. The government does not make this argument in so many words, and the evidence regarding police apprehension referred to the danger from the launching of the rocket itself. See op. at 2. But the argument is implied from the government’s brief that it is the combination of the illegal firearms, the rocket launcher, Crippen’s criminal record, and his dog that created exigent circumstances. See Respondent’s Br. at 18, 20, 21. Under the totality of the circumstances, and absent countervailing evidence either known or that should have been known indicating that Crippen, despite his recent acquisition of a tool of war, would not react violently, the police did not need to have information that he in fact had recently used firearms violently in order to conclude that there were exigent circumstances justifying a forced entry.
“It is always somewhat dangerous to ground exceptions to constitutional protections in the social norms of a given historical moment. The purpose of the Fourth Amendment’s requirement of reasonableness ‘is to preserve that degree of respect for the privacy of persons and the inviolability of their property that existed when the provision was adopted — even if a later, less virtuous age should become accustomed to considering all sorts of intrusion “reasonable.” ’ ” Richards, 520 U.S. at 393 n. 4, 117 S.Ct. at 1420 n. 4 (quoting Minnesota v. Dickerson, 508 U.S. 366, 380, 113 S.Ct. 2130, 2139, 124 L.Ed.2d 334 (1993) (Scalia, J., concurring)). The knock and announce requirements, incorporated into the Fourth Amendment and 18 U.S.C. § 3109 from the common law, see Wilson, 514 U.S. at 931-34, 115 S.Ct. at 1916-17; United States v. Ramirez, 523 U.S. 65, 73, 118 S.Ct. 992, 997, 140 L.Ed.2d 191 (1998), are vital to protecting “individual privacy interests,” Richards, 520 U.S. at 394, 117 S.Ct. at 1421, including a person’s house, which the common law viewed as “ ‘his [or her] castle of defense and asylum.’ ” Wilson, 514 U.S. at 931, 115 S.Ct. at 1916 (citing 3 William Blackstone, Commentaries *288). Finding an exigency based on a reasonable police conclusion concerning the violent character of a person harboring multiple weapons, one of which is a recently acquired tool of war, is different from finding an exigency based on merely the presence of an “unconventional” weapon that might be used against a “hardened target.” See op. at 6-7. The former bears an analogy to Gemido because it informs the police about Crippen’s possibly violent character toward government agents; the latter addresses the question left open in Gemido, which the court purports to leave open. See id. The inference about Crip-pen’s possible inclination to react violently, not the mere presence of a particular weapon, is the “something more” from which the court can conclude that the hasty police entry is consistent with avoidance of both unreasonable infringement of the interests protected by the Fourth Amendment and the type of blanket exception the Supreme Court rejected in Richards.
Accordingly, I concur in the judgment affirming the conviction.