UNITED STATES of America,
Appellee,

v.

Wallace E. WEAVER, Appellant.

No. 01–3042.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 10, 2002.

Decided Feb. 26, 2002.

Veronice A. Holt argued the cause and filed the briefs for appellant.

John K. Han, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, John R. Fisher, Thomas J. Tourish, Jr., and Steven J. Durham, Assistant U.S. Attorneys. Roy W. McLeese, III, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, Chief Judge, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

A jury convicted Wallace E. Weaver of each count of a fourteen-count indictment charging misappropriation of postal funds, in violation of 18 U.S.C. § 1711. The district court sentenced Weaver to concurrent terms of thirty months' imprisonment on each count, and ordered him to pay restitution to the United States Postal Service

of $120,622. Weaver's appeal is on the grounds that errors infected his trial, that he was entitled to a new trial, that his counsel was ineffective, and that the district court miscalculated his sentence.

## I.

Each count of the indictment corresponded to an alleged theft of postal funds on a particular day between December 20, 1994, and May 21, 1996. The government's evidence tended to show that Weaver began working as a supervisor at the Brentwood Road Post Office, the main post office in Washington, D.C., in May 1994. A Postal Service investigation conducted in 1996 revealed problems with several postage meter accounts for customers outside the District of Columbia who leased meters from Brentwood in order to obtain a D.C. postmark. Post offices in the customers' localities serviced the meters. The customers gave checks to their local post office and had their meters adjusted accordingly. The local post offices then sent the checks, and related paperwork, to the Brentwood facility. Brentwood maintained the balance ledger for each of the meters. When investigators looked at the books, they noticed that several meters were apparently still producing postage although the ledger indicated that no new payments had come in for quite some time.

Further investigation indicated that while Brentwood had received the meter customers' payments, no one had updated the ledgers. This led investigators to surmise that someone at Brentwood was stealing cash from the Main Office Window Unit and replacing it with the unrecorded checks to avoid detection. Eventually, they focused on Weaver, who often served as the close-out supervisor at Brentwood. The closeout supervisor deposited cash and checks received at the unit throughout the day. The ledger "gaps" began in May 1994, a date coinciding with Weaver's assignment to the Brentwood facility, and ended in the spring of 1996, around the same time postal inspectors questioned Weaver as part of their investigation. A handwriting expert testified that Weaver signed or marked the deposit slips for many of the checks corresponding to ledger gaps (including all fourteen days representing the separate counts charged in the indictment). A review of Weaver's personal finances demonstrated that his known expenditures well exceeded his reported income, and that he made large cash deposits to numerous bank accounts in 1994, 1995, and 1996. The government also elicited testimony showing that Weaver was a compulsive gambler.

Weaver took the stand and denied stealing any money. He produced a document indicating that he did not arrive at the Brentwood facility until May 21, 1994. This was designed to rebut the government's claim that the thefts began shortly after he started working as a supervisor at Brentwood. (The indictment did not charge Weaver with any thefts in May, but the government argued that he was the only postal employee working at the Brentwood facility on every date on which there was a suspected theft.) The date on the assignment document was typed on white correction tape.

After trial, but before sentencing, Weaver retained a new attorney, who now represents him in this appeal. During the interval his new counsel inspected several boxes of documents allegedly "discovered" at the Brentwood Post Office after trial. On the basis of these documents, Weaver moved for a new trial, arguing that they proved that he was not a closeout supervisor in May 1994 when the losses began and that the documents incriminated another

postal employee. The district court denied the motion on January 17, 2001.

The court sentenced Weaver on April 6, 2001. In addition to the $64,240 loss comprising the thefts charged in the indictment, the court attributed $56,382 in losses corresponding to eleven other ledger gaps.

## II.

Weaver's claims of error at trial are in two parts. The first is that the district court erred in allowing two witnesses, Rory Pankhurst and Carole Edwards, to testify without being qualified as experts. Because Weaver interposed no such objection, he may prevail only if the court committed plain error. *See* FED. R.CRIM. P. 52(b); *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Myles,* 96 F.3d 491, 495 (D.C.Cir.1996).

■ Pankhurst was a long-time member of the Postal Inspection Service specializing in revenue investigation and was a certified internal auditor. His testimony linked the ledger gaps and unrecorded (but deposited) checks to the alleged cash thefts. He examined the cash register logs for the fourteen days in the indictment and estimated the absolute minimum amount of cash received by the end of the day, based upon the types of transactions conducted at the windows. (For example, the purchase of a money order indicated a cash transaction, because one could not pay for this service by personal check or credit card.) He then compared this minimum amount to the close-out logs and determined that on nine of the fourteen days in the indictment there was less cash recorded than the bare minimum. Because the total amount (cash, credit cards, checks) balanced with the daily transactions register, he concluded that someone must have stolen cash and replaced it with unprocessed out-of-town postage meter checks.

Why Weaver thinks the court should have prevented Pankhurst from giving this testimony is not obvious to us even with his argument, and it surely would not have been obvious to the district court without any argument. Pankhurst was an active participant in the investigation. His testimony rested on the personal knowledge he gained during the course of his examination. *See* FED.R.EVID. 602. That he performed "routine computations and culling through of documents" to arrive at his conclusions did not require him to be qualified as an expert. *See United States v. Lemire,* 720 F.2d 1327, 1350 (D.C.Cir. 1983).

■ Carole Edwards was a forfeiture specialist at the Postal Service. She testified that on the basis of her review of Weaver's tax returns and other financial documents, his expenditures significantly exceeded his known income in 1994–1996. Weaver believes the analysis Edwards performed did not comport with basic accounting principles and that the need for her to be qualified as an expert should have been obvious to the district court. Like Pankhurst, Edwards' testimony was based on her personal review of the financial documents, and simply involved the addition of known sources of income and known expenditures. For that reason, the court's allowing her to testify without objection was not error.

■ According to Weaver, the other plain trial error occurred when the court admitted what he calls the government's "summary" exhibits. The argument portion of Weaver's opening brief did not identify which exhibits he meant to include in this category; his reply specified, in a caption, Exhibits 37 and 38. We will not consider Exhibit 37, which was a timeline of events relating to the investigation.

Neither Weaver's brief nor his reply brief contained any argument explaining what he thought constituted error in admitting this exhibit. *See Trans Union Corp. v. FTC*, 245 F.3d 809, 814 (D.C.Cir.2001); *see also United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir.1993).

■ Exhibit 38 was a chart, admitted during Pankhurst's testimony. The chart compared the attendance records of various Brentwood employees with the dates of the alleged losses, and indicated that Weaver was the only employee present at that facility on every date on which a theft occurred. Weaver argues that it was plain error for this "summary" exhibit to be admitted without "safeguards," by which he apparently means some sort of jury instruction.

■ Weaver's attorney, when asked by the court whether he had any objection to Exhibit 38, replied "No objection, your honor." Relying on Supreme Court dicta in *Olano*, the government maintains that Weaver thereby waived his right to complain about this evidence on appeal. *Olano* stated that when the defendant has waived a right at trial, not even plain error review is available on appeal. 507 U.S. at 733, 113 S.Ct. at 1777. Weaver's "No objection" relinquished an evidentiary point, not a constitutional right. *See id.* His counsel did more than sit by silently as the evidence came in. Instead, he made a conscious choice, on the record, to indicate his lack of objection. Whether he did so for tactical reasons—for instance, to convey to the jury that he believed Exhibit 38 was not telling, *see United States v. Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir.1995)— or because he did not have the imagination to come up with an objection, seems to us of no particular consequence. Plain error assumes that the court should have intervened *sua sponte* because the error was so obvious. When defense counsel has in-

formed the court that he has no problem with admitting the evidence, it may be too much to expect the trial court to second-guess defense counsel's position and make its own independent assessment of the possible grounds for exclusion. *See United States v. Lakich*, 23 F.3d 1203, 1208 (7th Cir.1994).

However, rather than deciding whether Weaver waived the point, we are content to rest on the ground that the trial court did not commit plain error in admitting Exhibit 38. As Rule 1006 required, the government made available for inspection the documents underlying the exhibit. *See* FED.R.EVID. 1006. While Weaver now claims that no document showed him working at Brentwood on May 12, 1994, his trial counsel agreed that the government showed him a payroll record indicating that Weaver was employed at Brentwood on that date.

As to Weaver's claim that the court should have issued some sort of "safeguards" with respect to Exhibit 38, we think he misapprehends the Rules of Evidence. Rule 1006, an exception to the best evidence rule, provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

FED.R.EVID. 1006. Exhibit 38 compared payroll records for various employees at the Brentwood facility with the dates of the alleged losses. As such, it was a "summary" exhibit under Rule 1006 and was itself evidence, serving as a substitute for the actual payroll records. We therefore

do not understand Weaver's point that an instruction was needed because the exhibit constituted inadmissible evidence. Weaver cites *Lemire,* 720 F.2d at 1347, but the case is not comparable. In *Lemire,* the testimony of a government witness summarized the testimony of previous witnesses and explained the significance of documents already in evidence. *See id.* at 1346. The witness used four "summary charts" while testifying. The defendants objected to the testimony but the trial court allowed it subject to a limiting instruction that the "testimony was explanatory and was not itself evidence." *Id.* at 1347. There is no indication that the government sought to introduce the charts into evidence and, so far as one can tell from the opinion, the only objection was to the summary testimony, not the charts. *Lemire* thus has nothing to do with this case. Although *Lemire* mentioned Rule 1006 by way of analogy, the opinion does not stand for the proposition that Rule 1006 summaries are not evidence or that in admitting such a summary into evidence the court commits plain error if it omits some sort of cautionary instruction when the defense has not requested one. *See* 3 STEPHEN A. SALTZBURG, ET AL., FEDERAL RULES OF EVIDENCE MANUAL 2078, 2089 (7th ed.1998 & Supp.2001).

### III.

Weaver moved for a new trial, arguing that the government violated its duty to turn over, before trial, documents his new counsel found at Brentwood after the trial. The motion was, in essence, a *Brady* claim. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district court denied the motion, a ruling with which we agree.

■ During discovery, the government informed Weaver's trial counsel that it possessed documents relating to the May 1994 losses. The government also filed a motion, unopposed by Weaver, to use the May 12, 1994, loss as Rule 404(b) evidence. We need not decide whether the government suppressed the documents, for there is no "reasonable probability" that he would have been acquitted if the discovered documents had been admitted. *Strickler v. Greene,* 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (internal quotations omitted); *see United States v. Bowie,* 198 F.3d 905, 908–09 (D.C.Cir.1999). We agree with the district court that the "documentary evidence produced by the government ... not only demonstrated Mr. Weaver's means and opportunity to commit the crimes charged, but also demonstrated the fact that his expenditures were far in excess of his postal worker's income" and "the cross-examination seriously undermined Mr. Weaver's credibility." It is worth adding that the missing documents indicated at most that Weaver did not serve as a close-out supervisor in May of 1994, and that another postal employee did. But Weaver was not charged with any thefts occurring in May 1994, and his handling the close-out on a particular day was not essential to the government's theory of the case. He was working at Brentwood on the date of the first uncharged theft incident—May 12, 1994— and had access to the cash received and the postage meter checks. Further, Weaver's trial counsel established in cross-examination of the government's witness that no document showed Weaver acting as a close-out supervisor on May 12.

### IV.

■ Weaver claims that his trial counsel was constitutionally ineffective, in violation of the Sixth Amendment to the Constitution. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When this issue is raised for the first time on appeal, as it is here, our general practice is to remand to the dis-

trict court for an evidentiary hearing unless it is clear from the record that counsel was or was not ineffective, or that the supposed defect in representation amounted to a strategic choice by defense counsel. *See United States v. Geraldo,* 271 F.3d 1112, 1116 (D.C.Cir.2001); *United States v. Richardson,* 167 F.3d 621, 626 (D.C.Cir. 1999); *United States v. Pinkney,* 543 F.2d 908, 915 (D.C.Cir.1976). The theory presumably is that trial counsel cannot be expected to argue his own ineffectiveness in a motion for a new trial, and so we ought to allow new counsel to argue it on appeal. *Geraldo,* 271 F.3d at 1116, points out that our approach may place us in a minority of one among the courts of appeals. (Other courts of appeals require defendants to raise their ineffectiveness claims only in a collateral proceeding. *Id.*) Rule 33 of the Federal Rules of Criminal Procedure requires new trial motions to be filed within 7 days of the verdict, yet our practice of remanding to the district court for an evidentiary hearing has the effect of greatly extending that time limit.

■ Weaver's claim of ineffectiveness, as set forth in his opening brief, is on two scores, both of which may be rejected without a remand for an evidentiary hearing. The first deals with counsel's failure to object to the testimony of Carole Edwards, the forfeiture specialist who testified that Weaver's expenditures far exceeded his known income from 1994 to 1996. Weaver basically repeats his claim that Edwards was an expert witness giving her "opinion, not fact." Brief of Appellant at 39–40. We have already rejected that argument. Weaver's second claim of ineffectiveness is counsel's failure to object to Exhibits 37 and 38 on the basis that Weaver was not working at Brentwood on May 12, 1994. *Id.* at 40. Here too we have already rejected the premise. Weaver has presented no argument about Exhibit 37 and Exhibit 38 was properly admitted for the reasons given above.

## V.

■ At sentencing, the government argued that, in addition to the indicted offenses, the losses identified as having occurred between May 12, 1994, and May 21, 1996 (essentially the Rule 404(b) evidence discussed at trial) should be attributed to Weaver. The court credited Weaver with eleven additional losses totaling $56,382. These thefts occurred immediately before and during the time of thefts charged in the indictment. Weaver argues that this finding of relevant conduct violates *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and is not supported by a preponderance of the evidence.

Weaver's *Apprendi* claim is hard to understand. The idea apparently is that any attribution of relevant conduct contravenes the spirit of *Apprendi.* We have, on numerous occasions, refused to extend *Apprendi* beyond its holding that any factor other than a prior conviction triggering a sentence above the statutory maximum must be submitted to and found by a jury. *See, e.g., United States v. Agramonte,* 276 F.3d 594, 597 (D.C.Cir.2001); *United States v. Fields,* 251 F.3d 1041, 1043–44 (D.C.Cir.2001); *In re Sealed Case,* 246 F.3d 696, 698 (D.C.Cir.2001).

■ Weaver's other complaint about the sentencing is well-taken. The court credited Weaver with $22,817 in losses, yet there was no evidence that checks for this amount were ever received at Brentwood. The government's theory of its case was that Weaver stole cash and covered his theft by depositing (but not logging) a postage meter check. The theory cannot hold with respect to the $22,817. Since checks totaling this amount never cleared, there is no way of knowing when the loss occurred and without a date there was no way of knowing whether Weaver worked on the day the check came in and no way of matching unexplained cash deposits in

Weaver's bank accounts with the loss. The district court clearly erred in attributing this amount to Weaver. *See United States v. Kim,* 23 F.3d 513, 517 (D.C.Cir. 1994). It reasoned that the $22,817 occurred close in time to the indicted offenses. But that alone cannot constitute a preponderance of the evidence. With respect to the other thefts, the government could point to corroborative evidence: for example, on the unindicted April 3, 1996 loss, the government had evidence to indicate that Weaver worked at Brentwood on the day the check arrived at the facility, that he was the close-out supervisor, that he signed the deposit slip for the check, and that his personal bank account showed a large cash deposit shortly thereafter. For the other attributed losses, the government could at least prove that Weaver worked at the Post Office on the date the check was deposited and that his bank accounts showed cash deposits shortly thereafter.

Weaver received a nine-level addition to his base offense level because the total losses attributed to him exceeded $120,000. Removing the $22,817 places the loss at less than $120,000 but more than $70,000— an eight-level addition under the applicable version of the Guidelines. U.S.S.G. § 2B1.1(b)(1)(I) (1998). Because the error affects the sentencing range the court should have applied (reducing it from 30–37 months to 27–33 months), the case will be remanded to the district court for resentencing.

\* \* \* \*

Weaver's conviction and the denial of his motion for a new trial are affirmed. The case is remanded for resentencing.

*So ordered.*