The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jeremy Michael PETSCHOW,
Defendant–Appellant.

No. 01CA1684.

Colorado Court of Appeals,
Div. III.

Sept. 23, 2004.

Rehearing Denied Oct. 21, 2004.

Certiorari Denied Sept. 6, 2005.

Ken Salazar, Attorney General, Wendy J. Ritz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

Defendant, Jeremy Michael Petschow, appeals the judgment of conviction, entered after a jury trial, of two counts of attempted first degree murder, two counts of attempted first degree assault, first degree burglary, conspiracy to commit first degree burglary, possession of burglary tools, twelve counts of second degree burglary of a dwelling, four counts of aggravated motor vehicle theft, four counts of theft, six crime of violence counts, possession of a weapon by a previous offender, possession of a weapon by a previous offender (repeat offense), and three habitual criminal counts. We affirm in part, reverse in part, and remand.

The evidence showed that defendant and two cohorts committed multiple burglaries and car thefts. In one burglary, defendant broke into a home after he concluded that the residents were not in. However, once defendant was inside, he was confronted by a man armed with a pistol. Defendant, who was also armed, fired six shots in the direction of the man and his wife and wounded the man before escaping.

## I. Jury Instructions

On appeal, defendant contends that the trial court did not correctly instruct the jury regarding the mens rea elements of attempted murder, attempted assault, burglary, and theft. Although we conclude that the trial court erred regarding the elements of attempted murder and attempted assault, defendant did not object at trial, and we conclude the error did not affect defendant's substantial rights.

### A. Standard of Review

A trial court must instruct the jury as to each element of a charged offense. *People v. Mattas*, 645 P.2d 254 (Colo.1982). When a

trial court misinstructs the jury regarding an element of an offense, it commits constitutional trial error. *Griego v. People,* 19 P.3d 1 (Colo.2001); *People v. Dunlap,* 975 P.2d 723 (Colo.1999). Constitutional error that results from an omitted or erroneous elemental instruction is subject to constitutional harmless or plain error analysis. *Griego v. People, supra; People v. Dunlap, supra.*

■ However, omission or erroneous description of the required mens rea does not render an instruction constitutionally deficient when the instructions taken as a whole clearly instruct the jury regarding the omitted or erroneous element. *People v. Mattas, supra; People v. Martinez,* 634 P.2d 26 (Colo.1981); *Gonzales v. People,* 166 Colo. 557, 445 P.2d 74 (1968); *People v. Ward,* 673 P.2d 47 (Colo.App.1983).

#### 1. Contemporaneous Objection Rule

In accordance with the contemporaneous objection rule, "[a]n accused may not withhold his objections until completion of his trial and after conviction, and later complain of matters which, if he had made a timely objection, would have allowed the trial court to take corrective action." *People v. Rollins,* 892 P.2d 866, 874 n. 13 (Colo.1995). With regard to jury instructions, a defendant must object before the instructions are given to the jury and only the objections made at trial may be considered on review. Crim. P. 30. Without these rules, a defendant could intentionally withhold an objection to a constitutional deficiency, on appeal argue that the error was not harmless beyond a reasonable doubt, and thus, unfairly manipulate the judicial process. *See United States v. Stewart,* 256 F.3d 231 (4th Cir.2001).

■ Therefore, a defendant who fails to object may forfeit the right to appeal a constitutionally deficient jury instruction. *See United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Lieberman v. Washington,* 128 F.3d 1085 (7th Cir.1997)(contemporaneous objection principles are not cast aside simply because a constitutional right might be lost).

#### 2. Plain Error

We may notice errors that are plain and affect substantial rights although they were not brought to the attention of the trial court. Crim. P. 52(b).

In a case in which the defendant's Fifth and Sixth Amendment rights were violated and the defendant did not object at trial, the United States Supreme Court stated that "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997)(quoting *United States v. Olano, supra,* 507 U.S. at 732, 113 S.Ct. at 1776); Fed. R.Crim.P. 52(b); *see also United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

■ Error is plain when it is "obvious, substantial, and grave." *People v. Salyer,* 80 P.3d 831, 838 (Colo.App.2003).

■ When there is a plain error and it affects substantial rights, we reverse only if after reviewing the entire record, we "can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Ramirez,* 56 P.3d 89, 93 (Colo.2002)(quoting *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987)). However, the supreme court has also held that, when assessing a claim of error under a plain error standard of review, "if the issue raised is of constitutional dimension, then 'reversal is required unless this court is convinced beyond a reasonable doubt that the error is harmless beyond a reasonable doubt.'" *People v. Harlan,* 8 P.3d 448, 490 (Colo.2000)(quoting *People v. Davis,* 794 P.2d 159, 189 (Colo. 1990)).

Thus, when the defendant asserts on appeal that an error is of constitutional dimension, we must first determine whether there was an error, and, if so, whether it was plain, and whether it affected the defendant's substantial rights. When we conclude that there was plain error that affected substantial rights, we must then apply the correct stan-

dard to determine whether reversal is required. *See Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *Johnson v. United States, supra; United States v. Olano, supra; United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)(when there is no contemporaneous objection to prosecutor's remarks that violate a constitutional right, the reviewing court must decide whether the violation constituted plain error); *United States v. Lott,* 310 F.3d 1231 (10th Cir.2002); *United States v. Perez,* 989 F.2d 1574 (10th Cir. 1993); *United States v. Burson,* 952 F.2d 1196 (10th Cir.1991); *United States v. Jefferson,* 925 F.2d 1242 (10th Cir.1991); *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001)("If a defendant lodges no objection to a trial court's jury instruction, a plain error standard should be applied in reviewing the instruction."); *Griego v. People, supra; People v. Harlan, supra; People v. Dunlap, supra* (constitutional errors that occur during the presentation of the case to the jury are compatible with both harmless error and plain error analysis).

### B.   Attempt Instructions

Defendant challenges the attempted first degree murder and the attempted first degree assault instructions. We perceive no reversible error.

"[C]ulpability for criminal attempt rests primarily upon the actor's purpose to cause harmful consequences." *People v. Krovarz,* 697 P.2d 378, 381 (Colo.1985); *see also Gann v. People,* 736 P.2d 37 (Colo.1987). Consequently, "to be guilty of criminal attempt, the actor must act with the kind of culpability otherwise required for commission of the underlying offense and must engage in the conduct which constitutes the substantial step with the further intent to perform acts which, if completed, would constitute the underlying offense." *People v. Frysig,* 628 P.2d 1004, 1010 (Colo.1981).

Consistent with these rulings, § 18–2–101(1), C.R.S.2003, states, "A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense."

### 1.   Attempted First Degree Murder

■   Defendant contends that the instruction regarding attempted first degree murder did not include as an element that he acted after deliberation and with the intent to cause the death of another person. We conclude that the instruction was erroneous, but the error did not affect defendant's substantial rights.

### a.

In *Gann v. People, supra,* the court considered the same challenge defendant makes here. There, the trial court instructed the jury as follows:

A person commits the crime of criminal attempt if:

>With intent he engages in conduct constituting a substantial step toward the commission of first-degree murder.

The elements of Criminal Attempt are therefore:

>(1) With intent,

>(2) Engages in conduct constituting a substantial step toward the commission of Murder in the First–Degree.

*Gann v. People, supra,* 736 P.2d at 38.

The supreme court concluded that the instruction was erroneous because it "omitted any reference to the requirement that the defendant must have acted after deliberation and with the intent to kill." *Gann v. People, supra,* 736 P.2d at 39.

Here, with regard to mens rea, the court instructed the jury that, to find defendant guilty, it was required to conclude that defendant "intentionally" engaged in conduct constituting a substantial step toward the commission of murder in the first degree.

The court also instructed the jury that "[a] substantial step is any conduct, whether act, omission or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

Applying the reasoning set forth in *Gann,* we conclude that the instruction here was

erroneous because it did not inform the jury that it was required to find that defendant made a substantial step toward the commission of first degree murder *after deliberation and with the intent to kill.*

### b.

■ However, the supreme court in *Gann* concluded that the erroneous instruction did not constitute plain error because it required the jury to find that the defendant engaged in "conduct constituting a substantial step toward the *commission* of murder in the First–Degree." *Gann v. People, supra,* 736 P.2d at 39. There, as here, the first degree murder instruction properly required the jury to find that the defendant must have acted after deliberation and with the intent to kill as an essential element. Thus, the instructions, when considered as a whole, clearly instructed the jury regarding the required mens rea. *Gann v. People, supra.*

Three divisions of this court have concluded that erroneous instructions that stated, as here, that the jury was required to find that the defendant "intentionally" engaged in conduct constituting a substantial step toward the commission of the completed crime, when read and considered in their entirety together with the instructions on the elements of the completed offense, clearly instructed the jury regarding the required mens rea. *People v. Beatty,* 80 P.3d 847 (Colo.App.2003); *People v. Johnson,* 74 P.3d 349 (Colo.App. 2002); *People v. Caldwell,* 43 P.3d 663 (Colo. App.2001).

Here, the instructions advised the jury that a substantial step is any conduct that "is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense," and together with the instruction on the elements of first degree murder, clearly instructed the jury as to the required mens rea.

Applying Crim. P. 52(b), and the holdings in *Ramirez, Johnson v. United States, Olano, Mattas,* and *Martinez,* we conclude that, although the elemental instruction was erroneous, the instructions taken as a whole kept the prosecution to its proper burden of proof concerning all the elements of attempted first degree murder. Consequently, the error did not affect defendant's right to have the jury determine the elements of the charged offense beyond a reasonable doubt and, thus, did not affect defendant's substantial rights or constitute an error of constitutional dimension. Hence, we conclude that reversal is not required.

In so holding, we reject defendant's argument that, although he did not object, *People v. Griego* and *People v. Harlan* require reversal unless the error here is harmless beyond a reasonable doubt.

In *Griego,* the defendant tendered an instruction regarding the required mental state and, consequently, preserved the error.

In *Harlan,* the supreme court first concluded that an instruction regarding the affirmative defense of intoxication was error of constitutional dimension because it fused the elements of separate statutory provisions. The defendant argued that this error impermissibly lowered the prosecution's burden of proof. The court stated that "because [the defendant] *preserved* the issue for appeal," it would consider the claim under a harmless error standard and that preserved error *requires reversal unless* "the appellate court can declare a belief that the error was harmless beyond a reasonable doubt." *People v. Harlan, supra,* 8 P.3d at 472 (quoting *Dunlap, supra,* 975 P.2d at 737)(emphasis added).

However, the court later held that, because the defendant *did not object* to the lack of a limiting instruction, the issue would be assessed under a plain error standard, even though it was a death penalty case. The court then ruled that, because this error was one of constitutional dimension, the error would *require reversal unless* the court was "convinced beyond a reasonable doubt that the error is harmless beyond a reasonable doubt." *People v. Harlan, supra,* 8 P.3d at 490 (quoting *Davis, supra,* 794 P.2d at 189).

We perceive no reason why the supreme court would have addressed preservation of the issue in both situations and stated that plain error review was necessary with regard to the limiting instruction if its ultimate analysis of the two errors was identical. In addition, the supreme court did not state that it intended to overrule the line of cases that

includes, among others, *Gann, Mattas,* and *Martinez.*

Therefore, we conclude that the proper analysis for unpreserved error is to determine whether there was an error, and, if so, whether it was plain, and whether it affected the substantial rights of the defendant. When an error is plain, affects the defendant's substantial rights, and is *not* one of constitutional dimension, reversal is required when we are persuaded, with fair assurance, that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Ramirez, supra.* When a plain error affects the defendant's substantial rights and the error *is* of constitutional dimension, reversal is required unless we are persuaded, beyond a reasonable doubt, that the error is harmless beyond a reasonable doubt. *People v. Harlan, supra.*

Here, like the supreme court in *Gann,* we have concluded that the error did not affect defendant's right to have the jury determine the elements of the charged offense beyond a reasonable doubt and, thus, did not affect defendant's substantial rights or constitute an error of constitutional dimension. *See Gann v. People, supra; People v. Beatty, supra; People v. Johnson, supra; People v. Caldwell, supra.* Hence, we conclude that reversal of the jury verdict is not required.

### 2. Attempted First Degree Assault

Defendant also contends the trial court erred because the instruction on attempted first degree assault did not include as an element that defendant intended to cause serious bodily injury to another person. We again perceive no reversible error.

The attempt instruction required the jury to find that defendant "intentionally, engaged in conduct constituting a substantial step toward the commission of assault in the first degree." The instruction on first degree assault properly required the jury to find that defendant acted with intent to cause serious bodily injury to another person. In addition, the jury was again instructed that a substantial step is conduct that is strongly corrobo-

rative of the firmness of the actor's purpose to commit the crime.

Again applying Crim. P. 52(b) and *Ramirez, Johnson v. United States, Olano, Mattas,* and *Martinez,* we, therefore, conclude that, although the instruction was obviously erroneous, the instructions, when read and considered together with the instruction on the elements of first degree assault and the definition of a substantial step, clearly instructed the jury regarding the required mens rea. Consequently, the error did not affect defendant's right to have the jury determine the elements of the charged offense beyond a reasonable doubt.

Based on the same analysis and considerations we applied regarding the attempted murder instruction, we conclude that reversal is not required.

### C. Burglary and Theft Instructions

Defendant next challenges the instructions regarding first and second degree burglary, conspiracy to commit burglary, theft, and aggregate theft. We find no error.

### 1. First and Second Degree Burglary and Conspiracy to Commit Burglary

Defendant challenges the instructions regarding first degree burglary, second degree burglary, and conspiracy to commit burglary on the basis that they did not contain the elements of the ulterior theft and aggregate theft felonies.

However, the instructions are consistent with the language of the statute, § 18–4–203, C.R.S.2003, and follow the pattern instructions. CJI–Crim. 8:02, 14:01, 14:03 (1993); *see People v. Brandyberry,* 812 P.2d 674 (Colo.App.1990). And, because the definitions of the ulterior specific crimes of theft and aggregate theft were properly set forth in separate instructions, there was no error. *See People v. Auman,* 67 P.3d 741 (Colo.App. 2002)(*cert. granted* Mar. 24, 2003).

### 2. Theft Instruction

Defendant next argues that the theft instruction was inadequate because it did not require the jury to find that he knowingly possessed or controlled the stolen items with-

out authorization of the true owner. Again, we disagree.

Because the intent requirement is set out separately from the elements that followed it, the requirement that defendant acted knowingly modifies the described acts that follow, including that defendant knew he obtained the items without authorization or by threat or deception. *See People v. Rodriguez,* 914 P.2d 230, 273 (Colo.1996); *People v. Stephens,* 837 P.2d 231 (Colo.App.1992); *see also* CJI–Crim. 16:01 (1993). Thus, we perceive no error in this instruction.

**3. Ulterior Aggregate Theft Instruction**

■ Defendant also contends that the trial court erred when it gave an instruction regarding aggregate theft that did not include the element that he acted "without authorization or by threat or deception," as provided in CJI–Crim. 16:01. We perceive no reversible error.

The prosecution presented sufficient evidence upon which the jury could conclude that whoever took the items did so without authorization. Indeed, there was no evidence upon which the jury could conclude otherwise. Defendant's theory of defense was that he was not present at, and was not involved in, any of the burglaries or thefts.

The instruction required the jury to determine whether, "as a result of the defendant having committed theft two or more times within a period of six months," the aggregate value of the stolen items was $15,000 or more. Thus, the aggregate theft instruction required the jury first to determine that defendant was guilty of theft.

Because the theft instruction informed the jury that it must determine whether defendant took the items at issue "without authorization or by threat or deception," in order to convict defendant of aggregate theft, the jury first had to conclude that the omitted element was proved beyond a reasonable doubt. *See People v. Auman, supra.*

Because the instructions as a whole clearly instructed the jury and because the evidence did not raise the possibility that whoever took the items was authorized to do so, we conclude that the omission of this element in the aggregate theft instruction does not require reversal. *See People v. Mattas, supra; People v. Martinez, supra; People v. Auman, supra.*

**II. Merger of Lesser Included Offense**

■ Defendant next contends that the court erred when it did not merge the conviction for attempted first degree assault and the conviction for attempted first degree murder of the same victim. We disagree.

When determining whether one offense is included in or merges with another, "we compare the elements of the statutes involved and not the evidence shown at trial." *Armintrout v. People,* 864 P.2d 576, 579 (Colo. 1993). A crime of violence charge serves to enhance the permissible sentence and is not an element of the related charged offense. A defendant may be convicted of attempted first degree murder without any proof that a deadly weapon was used. *See Armintrout v. People, supra; People v. Henderson,* 810 P.2d 1058 (Colo.1991).

In *People v. Beatty, supra,* a division of this court addressed this issue and concluded that attempted first degree assault is not a lesser included offense of attempted first degree murder after deliberation.

Here, the use of a deadly weapon is an element of attempted assault in the first degree but not of attempted murder in the first degree. Although the crime of violence charge requires proof that defendant used a deadly weapon, defendant could be convicted of attempted murder without such proof.

We agree with the reasoning and conclusions in *Armintrout, Henderson,* and *Beatty* and adopt them here. Accordingly, we conclude the trial court did not err.

**III. Aggravated Motor Vehicle Theft Convictions**

■ Defendant next challenges three of his four aggravated motor vehicle theft convictions because, among other things, the instruction added an alternative element that was not included in the three theft charges. Defendant argues that this variance constituted a substantive amendment. We agree.

Counts 24, 31, and 35 charged defendant with first degree aggravated motor vehicle theft on the basis that he retained possession or control of the motor vehicle for more than twenty-four hours as proscribed in § 18–4–409(2)(a), C.R.S.2003. However, the jury instruction allowed the jury to convict if defendant retained possession of the vehicle for more than twenty-four hours, or if "defendant used the motor vehicle in the commission of another crime, other than a traffic offense" as proscribed in § 18–4–409(2)(d), C.R.S.2003. The prosecutor did not seek to amend the charges pursuant to Crim. P. 7(e), and defendant did not object to the instruction.

The charging document must advise the defendant of the charges he or she is facing so that the defendant can defend himself or herself against those charges and be protected from further prosecution for the same offense. A charging document may be amended as to technical form during trial, but amendments that subject the defendant to the risk of conviction for an uncharged offense are prohibited. Crim. P. 7(e); *People v. Rodriguez, supra.*

A constructive amendment occurs when an essential element of the charged offense is changed, thereby altering the substance of the charging document. *People v. Rodriguez, supra.*

The People concede that the three theft counts at issue were constructively amended when the jury was instructed it could find defendant guilty if he used the vehicles in the commission of another crime. However, they contend that the first charge of aggravated motor vehicle theft included the additional element and that they had intended that the other three charges also include it. The People then argue that the defects here are technical and do not require reversal because they did not prejudice the substantive rights of defendant. We are not persuaded.

The instruction at issue here not only defined the offense stated in the charging document, but also incorporated an alternative element that defined an uncharged crime. The additional element pertains to a crime that arises under a separate subsection of the

statute that criminalizes auto theft and requires factual findings related to actions, times, and places not encompassed in the original charges. The addition of this element occurred after all evidence had been received in the case. *See People v. Jefferson,* 934 P.2d 870 (Colo.App.1996). Thus, because the constructive amendments added an uncharged crime, they were not merely technically changes; they were substantive and prejudicial.

Consequently, we reverse defendant's convictions for first degree aggravated motor vehicle theft as stated in counts 24, 31, and 35. *See People v. Valdez,* 946 P.2d 491, 497 (Colo.App.1997)("when a defendant is charged with one crime and the jury is instructed on the elements of another, a resulting conviction cannot stand"), *rev'd on other grounds,* 966 P.2d 587 (Colo.1998); *see also Hunter v. New Mexico,* 916 F.2d 595 (10th Cir.1990).

IV.   Accomplice Testimony Instructions

■ Defendant next asserts that the trial court erred when it refused to instruct the jury on the effect of accomplice testimony. We disagree.

Defendant tendered proposed instructions that directed the jury to consider the extent to which the accomplice witnesses "may have been influenced by the receipt of benefits and/or favored treatment from the government" and to consider their testimony "with greater caution than that of other witnesses."

The trial court rejected defendant's proposed instructions based on its conclusion that the accomplices' testimony was corroborated and the instructions regarding the credibility of witnesses adequately covered the issue of the influence favorable government treatment may have had on the witnesses' testimony.

An instruction that directs the jury to use caution when considering accomplice testimony "is to be given *only* when the prosecution's case is based on uncorroborated testimony of an accomplice." *People v. Montoya,* 942 P.2d 1287, 1293 (Colo.App.1996); CJI–Crim. 4:06 (1993). Thus, the propriety of a trial court's refusal to give such an instruc-

tion "turns on whether corroborating evidence of the accomplice's testimony exists in the record." *People v. Montoya, supra,* 942 P.2d at 1293.

Corroborating evidence need only identify the defendant and show his or her connection with the offense; it is not required to corroborate every aspect of the accomplices' testimony. *People v. Montoya.*

Here, property stolen during the burglaries and a pawn slip for additional stolen property were found in defendant's vehicle, a stolen item was found in defendant's apartment, property stolen in the burglaries was found in the van in which defendant was arrested, and defendant attempted to flee.

Thus, the record supports the trial court's conclusion that the accomplice testimony was corroborated and that the accomplice testimony instructions tendered by the defense should not be given.

## V. Second Degree Burglary Conviction

Defendant next contends that there was insufficient evidence to support one of his second degree burglary convictions. Again, we disagree.

■ A police officer testified that the owner of the home told him the home had been burglarized, and defendant's accomplice identified the victim's house as one that defendant had burglarized. Another officer testified that property belonging to the victim was found in a car the accomplice said defendant had stolen.

Defendant did not object but now asserts that, absent the hearsay testimony, there was insufficient evidence to support the conviction.

A jury may consider evidence that, while arguably excludable, is admitted without objection. *See People v. McGrath,* 793 P.2d 664, 667 (Colo.App.1989)("Once evidence, even if arguably excludable, is admitted without objection and retained without a motion to strike, the jury is generally free to consider it.").

As a result, we conclude that there was sufficient evidence admitted to sustain the conviction. *See People v. Trujillo,* 190 Colo.

45, 543 P.2d 523 (1975); *People v. Pineda–Eriza,* 49 P.3d 329, 333–34 (Colo.App. 2001)(when the sufficiency of the evidence is challenged, an appellate court must review all the evidence in the light most favorable to the prosecution and draw all inferences most favorable to the jury's verdict).

## VI. Inadmissible Evidence

Defendant next asserts that the court committed plain error when it did not stop the prosecution from presenting "overwhelming amounts of inadmissible and prejudicial evidence." We discern no reversible error.

■ Plain error assumes that the court should have intervened sua sponte because the error was so obvious. *United States v. Weaver,* 281 F.3d 228, 232 (D.C.Cir.2002).

Such a strict standard prevents defendants from "gambling for favorable verdicts and then resorting to appeal on errors that might have easily been corrected by objection at trial." *People v. Fichtner,* 869 P.2d 539, 543 (Colo.1994)(quoting *United States v. Stout,* 667 F.2d 1347 (11th Cir.1982)).

### A. Testimony Regarding Defendant's Silence and Character

■ Defendant first asserts that the prosecution elicited impermissible testimony that implied defendant's guilt based on his bad character and his exercise of his right to remain silent. Although we conclude that evidence of defendant's character was improper, we discern no plain error.

At trial, after the prosecutor asked a police detective about interviews of the accomplices, he asked the detective whether he had attempted to interview defendant. The detective responded that defendant did not want to talk about any burglaries.

The prosecutor asked the detective to be more specific, and the detective responded that defendant said he was going to surrender on the following Monday after "he tried to be with some girls or something to that effect." The prosecutor then asked the detective to recite defendant's exact words, and the detective responded that he believed defendant stated that "he was going to try to

get a piece of ass." The prosecutor then asked whether defendant's precise words, as quoted in the detective's report, were that defendant "wanted to get some pussy first." The detective replied that he did not see that phrase in his report but that, if it was there and was enclosed in quotation marks, it would be accurate.

■ Testimony and comments regarding a defendant's silence during custodial interrogation can give rise to inferences of guilt and wrongly prejudice a defendant who has exercised a constitutional privilege. *People v. Ortega*, 198 Colo. 179, 597 P.2d 1034 (1979). However, "reversible error exists only under circumstances in which the prosecution directs the attention of the jury to the defendant's silence and uses it as a means of [implying] guilt." *People v. Ashton*, 661 P.2d 291, 294 (Colo.App.1982).

■ Here, the limited testimony did not imply that defendant's silence demonstrated guilt. The prosecutor did not direct the jury's attention to defendant's silence, expand on the testimony, or refer to it later. We cannot conclude that the trial court had a duty to act sua sponte and, therefore, we perceive no plain error. *See United States v. Weaver, supra; People v. Quintana*, 996 P.2d 146 (Colo.App.1998)(finding no plain error when the testimony was brief, merely set forth the events surrounding defendant's arrest, and was not offered as substantive evidence of his guilt).

Although we conclude that the testimony regarding defendant's crude words implied bad character, *see* CRE 404, we reject defendant's assertion that the prosecutor purposefully mischaracterized defendant's purported statement. Again, defendant did not object, and we find no plain error. *See Wilson v. People, supra; see also People v. Garcia, supra.*

### B. Lay Opinion Testimony

■ Defendant also contends that the court abused its discretion when it did not prevent a police sergeant from rendering opinion testimony contrary to CRE 701. We discern no plain error.

The police sergeant testified that he ran string through the holes the bullets made as they entered and exited the walls to approximate the paths of the bullets. He stated that he listened to the 911 audiotape, talked with the victims, and observed blood stains as he inspected the scene to get a more precise understanding of the timing and locations of events. He then testified about the relative positions of defendant and the victims at various times and the paths of the bullets. Based on his observations, he stated his conclusion that defendant had attempted to kill the victims.

The sergeant did not testify that he was qualified through training or experience to form expert opinions regarding crime scene reconstruction, and the prosecution did not ask that the sergeant be permitted to render expert opinions.

When a witness does not testify as an expert, the witness's testimony regarding his opinions and inferences is limited to those that are rationally based on the witness's perceptions, helpful to a clear understanding of the witness's testimony, and not based on scientific, technical, or other specialized knowledge that is within the scope of CRE 702. CRE 701; *People v. Stewart*, 55 P.3d 107 (Colo.2002).

Here, defendant not only failed to object, but during cross-examination asked the witness for his "professional opinion" explicitly on two occasions and implicitly on several others. Thus, again, we cannot conclude that the trial court had a duty to act sua sponte to prevent the testimony that was elicited on direct examination or cross-examination. *See United States v. Weaver, supra.* Hence, we conclude that there was no plain error.

### C. Evidence of Uncharged Misconduct

■ Defendant next asserts that the trial court abused its discretion when it allowed the prosecutor to introduce evidence of uncharged misconduct. Defendant argues that this evidence was inadmissible evidence of character and the prosecution did not prove by a preponderance of the evidence that he committed the uncharged crimes. We again conclude there was no plain error.

The prosecution presented testimony, without objection by the defense, that defendant, among other things, (1) met two of the prosecution's witnesses when defendant and the witnesses were in jail, (2) admitted he had a criminal history, (3) said he liked doing burglaries, (4) admitted he committed five or six uncharged burglaries during the summer of 2000, (5) was suspected of committing as many as fifteen burglaries with one accomplice, (6) committed twenty-five to thirty burglaries with another accomplice, and (7) was "addicted" to burglary.

The People argue that the uncharged offenses were admissible as res gestae.

We conclude that the evidence was not admissible under CRE 404(b) or as res gestae. Assuming, without deciding, that the error was plain and affected defendant's substantial rights, after reviewing the entire record, we conclude the error did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. Therefore, reversal is not required.

### D. Bolstering Evidence

■■ Defendant next asserts that the trial court committed reversible error when it allowed the prosecutor to bolster the testimony of an accomplice with other witnesses' opinions that the accomplice was credible. We disagree.

The girlfriend of one of defendant's cohorts testified that her boyfriend told her he was waiting outside the house when defendant broke in and shot at the victim. She testified that her boyfriend was very believable.

In addition, a detective testified that he had interviewed the same girlfriend and that she had stated that defendant was very excited that night, very observant of traffic, and "looking out for something." He testified that the girlfriend believed defendant was at a party that night. The girlfriend did not provide this information during her testimony.

Some of the testimony about which defendant complains was proper because it served to corroborate the other witnesses' testimony. *See People v. Martinez*, 187 Colo. 413, 531 P.2d 964 (1975)(circumstantial corroborating evidence may be in the form of one accomplice corroborating another); *People v. Boehmer*, 872 P.2d 1320 (Colo.App.1993)(finding no plain error when the evidence was corroborative of other properly admitted testimony).

In addition, the record shows that defendant made no objection and that the portions of the testimony he now challenges were volunteered by the witnesses and were not responsive to the prosecutor's questions. *See People v. Abbott*, 690 P.2d 1263 (Colo. 1984).

To the extent that defendant argues that the testimony was inadmissible hearsay, we perceive no plain error. *See People v. Caldwell, supra.*

### E. Leading Questions

■■ Defendant also contends that the prosecution's many leading questions on direct examination violated his right to a fair trial. We discern no plain error.

Pursuant to CRE 611(c), leading questions are permitted on direct examination only as may be necessary to develop the witnesses' testimony.

Although "the examiner should not format the questions so that one version of the disputed facts is assumed to be true," *People v. Raehal*, 971 P.2d 256, 258 (Colo.App.1998), the record shows that the questions here do not, individually or collectively, require reversal of the convictions.

During this ten-day trial, both counsel used leading questions to move the testimony along. On some occasions, defense counsel objected to questions as leading, and the prosecution rephrased the questions. At one point the court asked both counsel to "limit yourselves to asking questions and not editorializing."

We disagree with defendant's contention that the prosecutor's pattern of asking leading questions "skirted foundational requirements or constituted testimony."

Because defendant did not object at trial on this basis, we review for plain error. *See*

*People v. Thompson*, 950 P.2d 608 (Colo.App. 1997). We conclude that the trial court did not err when it did not act sua sponte to curtail the leading questions and, therefore, there was no plain error. *See, e.g., People v. Raehal, supra.*

## VII. Closing Argument

■ Defendant next contends that prosecutorial misconduct during closing argument violated his rights to due process and a fair trial. Again, we conclude there was no reversible error.

To determine whether a closing argument is improper, we consider the nature of the comment and whether the jury's attention was directed to something it was not entitled to consider. *People v. Constant*, 645 P.2d 843 (Colo.1982).

During closing argument, a prosecutor "may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance, so long as he or she does not thereby induce the jury to determine guilt on the basis of prejudice or passion, inject irrelevant issues or evidence into the case, or accomplish some other improper purpose." *People v. Dashner*, 77 P.3d 787, 793 (Colo.App.2003).

### A. Misstated Inference

Defendant contends that the prosecutor improperly argued that the jury should decide, as a "threshold issue," whether the prosecution proved defendant was at the scene of the shooting, and then stated: "If you answer this, yes, he was in the house he was there in any capacity whatsoever, that if your answer to that question is yes, he's guilty of all 40 counts."

Defense counsel objected and, in effect, argued that it was not fair and reasonable to infer that defendant was guilty of all forty counts based on defendant's presence at just one of the burglaries. The court overruled defendant's objection and ruled that the argument constituted a reasonable inference from the evidence.

The prosecutor then argued that, under the complicity instruction, defendant's involvement in the shooting crime would make him guilty of those charges and, in addition,

the inference would be that the accomplices were also telling the truth about defendant's involvement in the "other things."

We find no reversible error by the trial court when it allowed the argument, especially after the prosecutor clarified that he was arguing that, if the jury concluded that defendant's cohorts were telling the truth about the shooting, the jury could infer that the cohorts were telling the truth about the other incidents as well. *See People v. Richardson*, 58 P.3d 1039 (Colo.App.2002)(a trial court has discretion in determining inappropriate prosecutorial argument, and it should consider the context in which the statements were made).

### B. Misstated Evidence

Defendant next contends that the prosecutor intentionally misstated the evidence when he argued that, if defendant had been present at the scene with the accomplice, he would be guilty under the theory of complicity and, by way of example, "[t]hat is why [the accomplice] pled guilty under the same theory." We discern no plain error.

The accomplice testified that although he had been charged with more than twenty counts, he had not yet entered into a plea agreement, but his attorney was working on it and had told him he was going to be sentenced to between sixteen and twenty years in prison.

Because defendant did not object to this argument, we review it for plain error. Plain error review of alleged prosecutorial misconduct will not be considered on appeal unless it affected the substantial rights of the defendant. *People v. Constant, supra.*

Although the accomplice did not testify that he had already pleaded guilty, it is apparent from the record that he intended to do so. We thus conclude there was no plain error. *See People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978) (prosecutorial misconduct in closing arguments rarely is so egregious as to constitute plain error).

### C. Misstated Burden of Proof

Defendant also asserts that the prosecutor "shifted the burden of proof" when he ar-

gued, again without defense objection, that "for [defendant] to live up to his theory of the defense, is simply, you would have to believe that [his accomplices] separately made a plan in their mind that they made a decision that they were going to frame [defendant]." The prosecutor continued by arguing, "I submit to you that this is not what happened. And that for them to do that, is not only improper, but impossible. The thing[s] that they would have had to do ... would include placing [a stolen] television in [defendant's] apartment."

We disagree with defendant's assertion that the prosecutor's argument shifted the burden of proof. Instead, we perceive the argument as a commentary on the implausibility of defendant's theory of the case. Thus, there was no error. Furthermore, we note that the prosecutor explicitly discussed the prosecution's burden of proof in closing and again in rebuttal, and the jury was properly instructed as to that burden.

## VIII. Constitutionality of Sentencing

■ Defendant next contends that the habitual criminal sentencing statutes, § 18–1.3–801, et seq., C.R.S.2003 (formerly codified at § 16–13–101, et seq.), and the statute relating to possession of weapons by repeat offenders, § 18–12–108(5), C.R.S.2003, are unconstitutional because they allow a court to find facts that increase a defendant's sentence beyond that authorized by the jury's verdict. We disagree.

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that a fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. However, the *Apprendi* Court explicitly excepted from its ruling "the fact of a prior conviction," which is the relevant determination in habitual offender and repeat offender enhancements. *Apprendi v. New Jersey, supra*, 530 U.S. at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455; *see also People v. Gilmore*, 97 P.3d 123 (Colo.App.2003)(ruling that *Apprendi* does not apply to repeat offender sentence enhancer in § 18–18–405(2)(a)(II), C.R.S.2003; *People v. Johnson*,

*supra* (ruling that *Apprendi* does not require jury trial regarding habitual criminal counts). We are not persuaded by defendant's argument that *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), mandates a different result.

■ In a related contention, defendant asserts that the trial court's imposition of consecutive sentences, pursuant to § 18–1.3–406(1)(a), C.R.S.2003 (formerly codified at § 16–11–309(1)(a)), violates the mandate of *Apprendi* because the court, rather than the jury, determined that the crimes of violence arose out the same incident. This argument was rejected by a division of this court in *People v. Clifton*, 74 P.3d 519 (Colo.App. 2003), *reaff'ing in part* 69 P.3d 81 (Colo.App. 2001). We conclude that the rationale of *People v. Clifton* is applicable and dispositive of defendant's contention here.

## IX. Habitual Criminal Sentencing

■ Defendant also contends that the trial court erred in adjudicating him as a habitual criminal because his Florida conviction would not have been a felony conviction if he had committed it in Colorado. We again disagree.

The trial court concluded that defendant was convicted in Florida for dealing in stolen property as an adult, rather than as a juvenile.

When, as here, an out-of-state conviction was a felony in the state where it was entered, it may be used in Colorado as a prior felony to support a habitual criminal conviction under § 18–1.3–801(2), C.R.S.2003. *People v. Drake*, 785 P.2d 1257 (Colo.1990)(rejecting the defendant's argument that the prosecution was required to prove that defendant's Kansas felonies would have been felonies in Colorado).

## X. Hearing on Habitual Criminal Counts

■ We also reject defendant's related contention that he was denied the right to present a defense to the habitual criminal charges.

The habitual criminal statute provides that a defendant is entitled to a separate adjudi-

cation of the underlying prior convictions, which the prosecution must prove beyond a reasonable doubt. *See* § 18–1.3–801; *People v. Quintana*, 634 P.2d 413 (Colo.1981).

At the habitual phase hearing, the prosecutor presented documentation supporting three prior felony convictions, one in Florida and two in Colorado. The court asked defense counsel, "[A]re you challenging that [defendant] has three prior felony convictions?" Counsel responded, "I am not your honor," and then noted that his only "attack" would be at the appellate level related to whether they were "constitutional convictions."

At a hearing three days later, the court concluded that it was not proper to rely on defense counsel's statement regarding the existence of the prior convictions. Therefore, the court asked defendant whether he understood the legal effect of his habitual criminal conviction, and he responded, "No."

After explaining some of the sentencing ramifications, the court told defendant: "You are not required to admit that you are a habitual criminal. It's up to the prosecution to prove beyond a reasonable doubt, to my satisfaction, that you have been convicted of the three habitual criminal counts that he has brought. Do you understand that?" Defendant responded in the affirmative, but then said, "I got a million questions but I am not going to go into that. . . ."

The court then informed defendant he had the right to remain silent and to testify in his own defense. The court later asked defendant, "Do you have any confusion about any of your rights associated with having been charged as a habitual criminal?" Defendant responded, "No."

The court then allowed defendant to speak with his attorney. When defendant stated that he thought he was going to get a hearing, the court replied that it intended to conduct a trial on the habitual counts and asked defense counsel whether he was prepared to proceed. Defense counsel responded that he had discussed the matter with defendant, who wanted to "put the prosecution through [its] burden" and proceed to

trial, with the understanding that he could testify on his own behalf.

The court then asked defendant whether he was ready to proceed, and defense counsel asked defendant whether he understood the circumstances and wanted to proceed. Defendant responded in the affirmative.

After the prosecution presented court files regarding the prior convictions and defendant testified in his own behalf, defense counsel argued that the prosecution failed to meet its burden. The court made findings of fact and concluded, beyond a reasonable doubt, that defendant "is the person who was three times convicted of separately brought and tried felonies." The court then entered an order finding defendant a habitual criminal.

The record does not support defendant's assertions that he was "unprepared to exercise the constitutional right he had just learned about" or that the court's "[inexplicable failure] to continue the hearing after stating the necessity to do so amounted to a deprivation of Defendant's right to present a defense." To the contrary, defendant testified in an effort to show that, because he was seventeen years old when he was convicted in Florida, the court should not consider that conviction. He did not request a continuance, did not make an offer of proof, and did not assert that a continuance would have enabled him to present any additional evidence in his defense.

Thus, the record shows that defendant was not denied his right to present a defense to the habitual criminal charges.

## XI. Cumulative Error

Finally, defendant argues that cumulative error, coupled with prosecutorial misconduct, deprived him of his right to a fair trial. We disagree. *See, e.g., People v. Drake*, 748 P.2d 1237 (Colo.1988); *People v. Dore*, 997 P.2d 1214 (Colo.App.1999).

Although individual formal irregularities may be harmless, they may, when considered together, demonstrate that the defendant did not receive a fair trial. *People v. Roy*, 723 P.2d 1345 (Colo.1986).

Here, we conclude that, other than the errors regarding the three aggravated motor vehicle theft charges, the errors, in the aggregate, did not deny defendant his constitutional right to a fair trial.

The judgment is reversed as to the three convictions of first degree aggravated motor vehicle theft, counts 24, 31, and 35, and the case is remanded to the trial court with directions to enter judgments of not guilty as to those offenses. The judgment is affirmed as to the remaining convictions.

Judge TAUBMAN and Judge HUME * concur.